678 P.2d 595

John D. McENROE and Agatha P. McEnroe, husband and wife, Plaintiffs-Respondents,

v.

Theo MORGAN and Mirla F. Morgan, husband and wife, Defendants-Appellants.

No. 13649.

Court of Appeals of Idaho.

Feb. 29, 1984.

Roger L. Williams, Nampa, for defendants-appellants.

Gary L. Morgan of Morgan & Wellman, Caldwell, for plaintiffs-respondents.

SWANSTROM, Judge.

This is an appeal from a district court judgment which denied rescission of a land sale contract by purchasers who had defaulted. The judgment allowed the vendors (respondents) to retain as liquidated damages the equity in a home which the purchasers had conveyed to vendors as a down payment. In addition, the district court awarded the vendors compensatory and punitive damages against appellants for malicious interference with the contract between the vendors and the purchasers. We affirm in part, reverse in part and remand.

We discuss three issues in this appeal. First, did the district court err in denying rescission of the sale by the purchasers and in quieting title to the trade-in home in the vendors? Second, is there sufficient evidence to support the district judge's conclusion that the purchaser's brother tortiously interfered with the vendors' contract rights? Third, did the district judge err in awarding the vendors general and punitive damages and in computing the amount of those damages? The vendors also request attorney fees on appeal.

## FACTS

In 1976 Jack and Deanne Morgan, who are not parties in this case, contracted with Action West Development, Inc. to purchase a home we refer to as the Midland property. Action West held the legal title to the property, which was subject to a mortgage in favor of Home Federal Savings. Jack and Deanne agreed to assume the mortgage and allow Action West to retain legal title until the balance on the contract was paid. A warranty deed was prepared, naming Action West as seller and Jack and Deanne as buyers. Jack and Deanne were to receive this deed from Action West after paying the balance on the contract.

In January 1978 Jack and Deanne contracted to purchase a luxury home in Cherry Lane Meadows Subdivision from the McEnroes for $190,000. As a down payment they gave an assignment of their contract with Action West on the Midland property for which they were credited with an equity worth $7,237, against the purchase price of their new home. They gave the McEnroes a warranty deed to the Midland property and the McEnroes, in turn, agreed to assume the mortgage with Home Federal and to pay the balance on the contract with Action West. The McEnroes were to receive the deed from Action West to Jack and Deanne when the balance on the contract was paid, thus completing the McEnroes' chain of title to the trade-in.

Jack and Deanne failed to make the first monthly payment on the Cherry Lane home, due March 1, 1978. The McEnroes sent them a notice of default on March 17. Jack and Deanne notified the McEnroes on March 31 that they were rescinding the contract on the Cherry Lane home. They claimed that the McEnroes had made misrepresentations concerning the home and had failed to assume the Home Federal mortgage on the Midland property and make payments on it. At the same time Jack and Deanne also executed a document purporting to assign whatever interest they had in the Midland property to Jack's brother, Theo, and his wife, Mirla Morgan (hereinafter the Morgans).

In the meantime, Theo had already become involved in the dispute, having gone to Action West on March 13 and paid the balance owing on the Midland property contract. Action West in turn released to Theo the deed conveying the property to Jack and Deanne. At Theo's request, Action West also gave him a quit claim deed to the Midland property, which he recorded. Theo Morgan next contacted Home Federal on March 14 and signed an agreement to assume its mortgage. He paid Home Federal $1,788 for several past due mortgage payments. He later paid subsequent installments. When the McEnroes attempted to assume this mortgage they found that Theo had already assumed it; thus Home Federal would not allow them to sign an assumption contract. Nevertheless, from the time of the sale the McEnroes had possession of the Midland property. They proceeded to make improvements and then

leased the property to their daughter.[1] Meanwhile, Jack and Deanne moved out of the Cherry Lane home in mid-April. In October the McEnroes resold it for $195,000.

## RESCISSION ISSUE

As noted earlier, in March 1978 when Jack and Deanne received notice that they were in default on the contract to purchase the Cherry Lane home, they responded by notifying the McEnroes that they were rescinding the contract. The Morgans—as purported assignees of Jack and Deanne—have asserted two grounds for rescission. They allege, first, that the McEnroes were guilty of misrepresentation in failing to disclose that the carpet, appliances and draperies in the Cherry Lane home had not been paid for and that, as a result, litigation was pending. Several appliances had been installed by a former owner and she claimed that the McEnroes owed her money for these items. At trial the Morgans failed to prove that the former owner had any claim against the McEnroes which threatened Jack and Deanne's interest in the Cherry Lane home.

■ Rescission is an equitable remedy that totally abrogates the contract and restores the parties to their original positions. *Blinzler v. Andrews*, 94 Idaho 215, 485 P.2d 957 (1971). Fraud on the part of a seller in inducing a purchaser to enter into a land sale contract renders the contract voidable and gives the purchaser the right to rescind. 91 C.J.S. VENDOR AND PURCHASER § 157 at 1111 (1955). However, the burden is on the party seeking rescission to prove the fraud he alleges. *Thomas v. Gordon*, 68 Idaho 254, 192 P.2d 856 (1948). Here the district court specifically found that the McEnroes "did not make any misrepresentations of fact relative to" the Cherry Lane home. The record discloses that this finding was not clearly erroneous and thus it will not be disturbed on

appeal. *J.E.T. Development v. Dorsey Construction Co., Inc.*, 102 Idaho 863, 642 P.2d 954 (Ct.App.1982). We hold that the contract could not be rescinded on the basis of misrepresentation.

■ A purchaser may also elect to rescind a land sale contract and seek restitution of the benefits he has conferred on the seller if the seller has materially breached the contract. *See McMahon v. Cooper*, 70 Idaho 139, 212 P.2d 657 (1949). The breach, however, must be "so material that it destroys or vitiates the entire purpose for entering into the contract." *Blinzler v. Andrews*, 94 Idaho at 218, 485 P.2d at 960.

■ The Morgans contend that the McEnroes were guilty of a material breach of contract by failing to assume the Home Federal mortgage on the Midland property and to make payments on that obligation. We disagree. Although the McEnroes failed to make the February 15 payment, and failed during the month of February to contact Home Federal regarding the mortgage, they eventually did attempt to assume the mortgage sometime in mid-March. They found, however, that Theo Morgan had already assumed the mortgage. By the time Jack and Deanne sent their notice of rescission, therefore, the McEnroes had attempted to fulfill their obligation, but were prevented from doing so. We cannot conclude that rescission was proper under the facts of this case. If the McEnroes did breach the contract, they attempted to cure the breach *before* Jack and Deanne tried to rescind the contract. *Cf. Olson v. Quality-Pak Co.*, 93 Idaho 607, 469 P.2d 45 (1970) (payment was due upon completion of construction job, but no notice of completion was given; therefore, tender of payment by owner approximately one month later was timely). We hold that the district court did not err by failing to order rescission of the contract.

---

**1.** This dispute actually involves two law suits. The Morgans filed the first one seeking to oust the McEnroes' daughter from the Midland property. That action prompted this one by the McEnroes to quiet title to the Midland property. The district court elected to hear the McEnroes' suit first because it would likely control the outcome of the other suit.

## TORTIOUS INTERFERENCE WITH CONTRACT ISSUE

■ The district court also held that the Morgans maliciously interfered with the McEnroes' contractual rights with respect to the Midland property. The Morgans first point out that there is no evidence in the record to support the district court's conclusion that Mirla Morgan interfered with the plaintiffs' contract rights. After reviewing the record, we agree with this contention. *Cf. Reese v. Cradit*, 12 Ariz. App. 233, 469 P.2d 467 (1970) (wife's separate property not liable for fraud committed by husband absent showing that she participated in the fraud). Therefore, the judgment for damages against Mirla Morgan for interfering with the McEnroes' rights must be reversed.

■ The Morgans further contend that Theo's actions were justified to protect Jack and Deanne's equity in the Midland property. In *Barlow v. International Harvester Co.*, 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974), our Supreme Court discussed tortious interference with contracts:

(1) A prima facie case of the tort is established where the plaintiff adduces proof of these elements: (a) the existence of a contract, (b) knowledge of the contract on the part of the defendant, (c) intentional interference causing a breach of the contract, and (d) injury to the plaintiff resulting from the breach.... "Malice in the sense of ill-will is not required" to establish a prima facie case....

(2) Once the plaintiff has made a prima facie case, the burden is on the defendant to prove justification....

(3) "Unlike the law of defamation, this branch of the law [interference with contract] has not crystallized a complete set of definite rules as to the existence or nonexistence of privilege. * * * The issue in each case is whether the actor's conduct is justifiable under the circumstances; whether, upon a consideration of the relative significance of the factors involved, his conduct should be permitted despite its expected effect of harm to another." Restatement of Torts § 767, comment a at 63 (1939). "What is 'unwarranted' interference depends on the facts of each case." [Citations omitted.]

The record reveals abundant evidence establishing the elements of a prima facie case. The parties stipulated that, prior to becoming involved in the transaction, Theo Morgan was aware of the contracts between Jack and Deanne and the McEnroes. Furthermore, by assuming the Home Federal mortgage and paying off the Action West contract, thereby acquiring deeds to the Midland property, Theo Morgan deliberately prevented the McEnroes from performing their contractual obligations. Finally, the McEnroes were substantially injured because Theo Morgan's conduct disrupted their chain of title to the Midland property.

Once the McEnroes had established a prima facie case, the burden shifted to Theo Morgan to prove justification. He argues that he took the action he did in order to protect Jack and Deanne's equity in the Midland property from an unjust forfeiture. Jack and Deanne, however, had conveyed the property to the McEnroes and had not yet attempted to rescind the contract of sale for the Cherry Lane home. Any interest Jack and Deanne may have had was dependent upon whether they had sufficient grounds for rescission. We have held above that no grounds for rescission had been shown; thus, Theo cannot justify his actions by claiming a right to rescind the contract.

Theo also contends that his actions were necessary because the mortgage with Home Federal was in arrears and foreclosure was pending. The record shows that most of the arrearage was due to Jack and Deanne's failure to make payments before the property was sold to the McEnroes. Moreover, at no time did Home Federal ever send notice of default or institute foreclosure proceedings.

The record thus reveals no justification for Theo Morgan's conduct. We hold that the district court's decision that Theo Mor-

gan interfered with the McEnroes' contract rights was not in error.

## FORFEITURE AND DAMAGE ISSUES

The contract of sale for the Cherry Lane home contained a forfeiture provision typical of land sale contracts. It provided that in the event of default the purchasers would forfeit all rights under the contract if the default was not cured within thirty days after receiving notice. Furthermore, it stated that if the default was not corrected, the McEnroes had the right to retain all payments as "liquidated damages ... and as compensation for the reasonable use and occupation of the said premises." Finally, Jack and Deanne gave the McEnroes a quit claim deed to the Cherry Lane home. The contract provided that should they fail to cure a default, the McEnroes could record this deed.

Jack and Deanne received notice of default in mid-March of 1978, but did nothing to correct any defaults. After thirty days the McEnroes recorded the quit claim deed and eventually resold the Cherry Lane home. They also retained possession of the Midland property. The Morgans contend that the district court erred in quieting title to the Midland property in the McEnroes because forfeiture of that property was unconscionable and was a "penalty." The Morgans' counterclaim in this action had asked for restoration of the Midland property or damages.

Our Supreme Court has stated:

Generally speaking, parties to a contract may agree upon liquidated damages in anticipation of a breach, in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract bear a reasonable relation to actual damages. But, where the forfeiture or damage fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damage, and is exorbitant and unconscionable, it is regarded as a "penalty", and the con-

tractual provision therefor is void and unenforceable.

*Graves v. Cupic*, 75 Idaho 451, 456, 272 P.2d 1020, 1023 (1954). *See also Ellis v. Butterfield*, 98 Idaho 644, 570 P.2d 1334 (1977); *Schlegel v. Hansen*, 98 Idaho 614, 570 P.2d 292 (1977). The question before us, then, is whether the forfeiture of the Midland property as liquidated damages was reasonable in relation to the actual damages suffered by the McEnroes and was not "exorbitant and unconscionable."

Unfortunately, our review is handicapped by a lack of findings and conclusions by the district court on this issue. The issue was, however, raised in the district court as an affirmative defense in the answer to the McEnroes' complaint. Therefore, we are bound by the rule set forth in *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982).

The purpose behind requiring the court to "find the facts specially and state separately its conclusions of law thereon" is to afford the appellate court a clear understanding of the basis of the trial court's decision, so that it might be determined whether the trial court applied the proper law to the appropriate facts in reaching its ultimate judgment in the case. . . . The absence of findings and conclusions may be disregarded by the appellate court *only* where the record is clear, and yields an obvious answer to the relevant question. . . . Absent such circumstances, the failure of the trial court to make findings of fact and conclusions of law concerning the material issues arising from the pleadings, upon which proof is offered, will necessitate a reversal of the judgment and a remand for additional findings and conclusions, unless such findings and conclusions would not affect the judgment entered . . . and, where there is no evidence which would support further findings material to the judgment, the judgment will simply be reversed, the plaintiff having failed to prove his claim. [Citations omitted and emphasis original.]

We will thus take our review of this issue as far as the present findings and conclusions, or the uncontradicted evidence in the record, permit.

The contract of sale set Jack and Deanne's equity value in the Midland property at $7,237. The Morgans contend, however, that the equity in the property at the time of the assignment was actually $17,237 and at trial they presented the testimony of an appraiser to show that the property was undervalued by $10,000. They assert that for tax purposes Jack and Deanne and the McEnroes mutually agreed to understate the values of their properties by $10,000. They argue that the forfeiture of $17,237 is exorbitant and unconscionable.

■ The district court, however, made a specific finding that neither the Midland property nor the Cherry Lane home was "downgraded" by any amount in arriving at their recited values. We have reviewed the evidence, including the testimony of the parties and of the appraisers who testified as expert witnesses for both sides, and conclude that the court's finding is supported by substantial, competent evidence. Accordingly, it is not clearly erroneous and will not be disturbed on appeal. *J.E.T. Development v. Dorsey Construction Co., Inc., supra.*

The question remains whether a forfeiture of $7,237 is a penalty. The Morgans contend that such a forfeiture was unconscionable because Jack and Deanne were in possession of the Cherry Lane home only two and one-half months and the actual damages suffered by the McEnroes were much less than $7,237. They point to the fact that in October the McEnroes resold the property for $195,000—$5,000 more than the original sale price. We reject the Morgans' contention for several reasons.

First, the district court found that, between mid-April and the time the home was resold, the McEnroes spent at least $5,000 for improvements and repairs and personal property sold with the home, thus negating any benefit to them from the higher resale price. This finding is supported by the evidence. "The measure of damages for breach of an executory contract of sale is the difference between the contract price and the market value of the premises at the time of the breach unless by the contract the parties have otherwise stipulated." *Anderson v. Michel*, 88 Idaho 228, 236, 398 P.2d 228, 233 (1965) (quoting *State ex rel. Robins v. Clinger*, 72 Idaho 222, 230, 238 P.2d 1145, 1150 (1951)).

The findings of the district judge, while not explicit, make it clear that he found there was no difference between the contract price and the market value of the premises at the time of the breach. The market value then was not a factor that resulted in either a gain or a loss to the vendors here.

■ As we have already noted, the district judge is to weigh the amount of actual damages suffered by the vendor because of the breach against the amount of liquidated damages to determine whether the latter amounts to a penalty. The burden of proving that the damages provided by the contract did not bear a reasonable relation to McEnroes' actual damages, or that the liquidated damages were exorbitant and unconscionable, rests upon the Morgans. *Howard v. Bar Bell Land & Cattle Co.*, 81 Idaho 189, 340 P.2d 103 (1959). One such item of actual damages that may be considered in this case is the fair rental value of the Cherry Lane home while the Morgans had possession of it. *See e.g., Walker v. Nunnenkamp*, 88 Idaho 222, 398 P.2d 444 (1965); *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954); *Williamson v. Smith*, 74 Idaho 79, 256 P.2d 784 (1953).

Here the only proof as to the rental value of the Cherry Lane home was provided by the McEnroes. John McEnroe, a developer, builder and real estate broker, testified that the reasonable rental value was $2,000 per month. An expert appraiser gave his opinion that $1,727 per month was the reasonable rental value. Thus, there was uncontradicted, competent expert testimony that the reasonable rental value was at least $1,727 per month. We will therefore use this figure in our review.

It is undisputed that the Morgans had possession of the Cherry Lane home from the first of February until mid April. After they vacated the premises, the McEnroes had some cleaning done and immediately took steps to try to resell the property. Under any reasonable view of the evidence, we believe the Morgans should be charged with the rental value of the premises for the months of February, March and April.

The district court found that under the contract the Morgans were to pay the taxes and insurance on the Cherry Lane home, pro-rated as of February 1, 1978. The district court further found that the Morgans did not pay any of the taxes and insurance and that this breach of the contract cost the McEnroes $1,466.66 for taxes and $385.33 for insurance between February 1, 1978 and October 1, 1978, when the new purchasers assumed these obligations. We hold that this was not correct. By terminating the contract, the McEnroes curtailed any obligation the Morgans had to pay taxes and insurance after the month of April. *Cf. Ellis v. Butterfield,* 98 Idaho 644, 570 P.2d 1334 (1977) (vendors who terminated contract could not later assert an attorney fee clause in it while successfully defending against purchasers action to reinstate the contract). Moreover, by charging the Morgans with the reasonable rental value of the premises for February, March and April, the pro-rated taxes and insurance for those months are considered to be included. *See Walker v. Nunnenkamp, supra.*

The district court also found that the McEnroes incurred attorney fees, contract costs, and title report costs amounting to $455.60 as a result of the breach by the Morgans. A court of equity may properly consider such expenses in determining whether or not the retention of payments made involves an unconscionable penalty. *Walker v. Nunnenkamp, supra.*

Finally, the court found that the McEnroes incurred $2,937 in attorney fees in prosecuting the action to quiet title to the Midland property and in defending against the claims of the Morgans. In the judgment entered against Theo and Mirla Morgan, the court allowed $2,937 for the attorney fees and $912.75 as costs of the action. The Idaho Supreme Court has repeatedly held that such fees and expenses are proper items to be considered by the trial court in making its determination as to whether the amount retained under an agreement for liquidated damages constitutes a penalty. *Dolbeer v. Harten,* 91 Idaho 141, 146, 417 P.2d 407, 412 (1966); *Walker v. Nunnenkamp, supra.* However, where such attorney fees and costs are found to be part of the liquidated damages which the seller is permitted to retain, then they cannot also be awarded against the defaulting purchaser as part of a money judgment for damages. That would result in a double recovery. We will discuss this aspect later.

From undisputed evidence and from findings that were made, the record clearly shows the actual damages suffered by the McEnroes to consist of at least the following:

| | |
|---|---|
| Reasonable rental value for three months | $5,181.00 |
| Contract default expenses and fees | 455.60 |
| Attorney fees incurred in this action | 2,937.00 |
| Costs of litigation | 912.75 |
| Total of actual damages | $9,486.35 |

We now turn to the amount of liquidated damages which the McEnroes have been permitted to retain. These include the Morgans' equity in the Midland property. The contract stated the equity value to be $7,237. A comparison of that value alone with the amount of actual damages would clearly lead to the conclusion that the forfeiture was not a penalty. However, the evidence discloses other factors about which no findings were made and which need to be mentioned here.

McEnroes agreed to assume a mortgage balance of $26,423.93 owing on the Midland property. Unknown to them, there were several delinquent installments that should have been paid by Jack Morgan. On March 14, 1978, Theo stepped into the dis-

pute and tried to get the Midland property back for his brother, Jack. Theo paid a total of $1,788 to Home Federal on the mortgage. Approximately $1,163 went to interest, most of which must have accrued on the delinquent payments,[2] but it appears that about $294 did benefit the McEnroes. In addition the McEnroes received the benefit of $625 credited against the principal. Theo also made five later payments of principal and interest totalling $1,490. All of these payments benefited the McEnroes. Theo also paid $1,381 to clear the contract balance owing on the Midland property to Action West. The total of these benefits is $3,790. The district judge ordered that all these payments would, in effect, be forfeited as "punitive damages" assessed because of Theo's malicious interference with the McEnroes' contract rights.

■ Because of the procedure used to arrive at the amount of punitive damages, and the lack of findings by the district court, we do not uphold an award of punitive damages, as we explain later. We also explain why Theo is not entitled to have the money he "invested" in the Midland property returned to him as he requested in his counterclaim. We do believe, however, that the benefits Theo has bestowed upon the McEnroes by making the payments should be deducted from the amount of actual damages suffered by the McEnroes as a result of the breach, for the purpose of determining whether the liquidated damages constitute a penalty.

| | |
|---|---|
| Actual damages shown by the record | $9,486.00 |
| Less benefits derived from Theo's payments | 3,790.00 |
| McEnroes' proven loss | $5,696.00 |
| Amount of liquidated damages | $7,237.00 |

Therefore the record shows the actual damages were at least seventy-eight percent of the liquidated damages.

■ In our view these figures do not represent such a disparity between proven

damages and liquidated damages, so as to result in a penalty. *Cf. Anderson v. Michel, supra* (in which actual damages of $49,475.16 were seventy-six percent of the liquidated damages of $65,366.98 and were found not be a penalty). Accordingly, we can uphold, on the present record, a judgment which results in the forfeiture of this amount. However, we need to discuss briefly why we hold that other amounts awarded in the judgment cannot be upheld.

In addition to quieting title to the Midland property in the McEnroes, the district court awarded to them general damages of $4,838.99 and punitive damages of $4,659.08. Included as general damages were $2,937 for attorney fees and $1,901.99, representing expenses paid by the McEnroes for taxes and insurance on the Cherry Lane home from mid-April to October 1, 1978. The court computed the punitive damages by adding the $1,381.08 spent by Theo Morgan to retire the contract balance with Action West, and the $3,278 expended by him in payment of the Home Federal mortgage.

■ In our discussion of the forfeiture issues, we have already stated why the award of general damages for taxes and insurance cannot stand. These losses are attributable to Jack and Deanne's breach of contract to purchase the Cherry Lane home. When they purchased the property, the taxes and insurance were pro-rated, Jack and Deanne agreeing to pay the taxes and insurance for 1978 from February 1 onward. The McEnroes, however, have already been compensated through the liquidated damages clause. A party who elects to retain liquidated damages is not entitled also to recover specific items of compensatory damages. *Idaho State University v. Mitchell*, 97 Idaho 724, 552 P.2d 776 (1976); *Grant Construction Co. v. Burns*, 92 Idaho 408, 443 P.2d 1005 (1968). The same reasoning we applied to the taxes and insurance applies to attorney fees as general

---

**2.** When the McEnroes agreed to assume this mortgage they were led to believe the payments were current. In fact, Jack and Deanne had missed several payments and, as a result, additional interest had accrued. Payment of that

interest was Jack and Deanne's obligation and when Theo paid it no benefits were bestowed upon the McEnroes beyond what was agreed to in the contract.

damages. The award of $4,838.99, as general damages, must therefore be stricken from the judgment.

Finally, the district court held that the evidence demonstrated that the Morgans had knowingly and maliciously interfered with the McEnroes' contract rights, warranting an award of punitive damages. The district court held that, as punitive damages, the McEnroes were entitled to retain the benefit of all money paid by Theo Morgan to Action West and Home Federal up to the date of the judgment. Because the district judge did not know the total of the payments which they may have made since the date of the trial, the he authorized and directed the McEnroes' counsel to "prepare a formal Judgment ... and to investigate and set forth in said Judgment ... what the payment status of said mortgage is and how much the Theo Morgans have paid ... and insert those figures in said Judgment...." We hold that this was error. An award of punitive damages arrived at in this fashion cannot be sustained. However, this does not mean that the Morgans have shown they are entitled to the return of these payments.

When Theo made payments to Action West and to Home Federal in an attempt to regain the Midland property for his brother Jack, neither of them had any interest in that property. It had already been conveyed to the McEnroes as a down payment. At that time Theo did not even have a written assignment from Jack and Deanne for their interest in either the Midland property or in the Cherry Lane home. Our Supreme Court has said:

It is a well settled general rule (except where otherwise provided by statute), that a person cannot, either by way of set-off or counterclaim, or by direct action, recover back money which he has voluntarily paid with full knowledge of all of the facts, and without any fraud, duress or extortion, although no obligation to make such payment existed.

*Breckenridge v. Johnston,* 62 Idaho 121, 133, 108 P.2d 833, 838 (1941); *compare Williams v. Johnston,* 92 Idaho 292, 442 P.2d 178 (1968). *See also* RESTATEMENT OF RESTITUTION § 2 (1937).

We have examined the remaining issues raised by the Morgans and find them to be without merit. Therefore, we remand the case to the district court for further proceedings.

Based on our examination of the present record, a modified judgment should be entered, quieting title to the Midland property and to the Cherry Lane home in the McEnroes. The judgment should deny all relief sought by the Morgans on their counterclaim. The judgment may contain other directives and provisions necessary to obtain compliance with the judgment. Costs to appellants. No attorney fees are awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.