| 2  | 199 |
| 14 | 35  |
| 14 | 36  |
| 14 | 157 |

---

## LOUIS McLANE, JR., APPELLANT, *v.* ABRAMS ET AL., RESPONDENTS.

When a party borrows money and agrees to pay a certain rate of interest until due, the contract is broken when the day of payment is passed, and the note remains unpaid. After breach, in the absence of a continuing contract as to interest, the Statute fixes the damages to be recovered.

By our Statute, the rate of interest (or damage for detention) after breach is the same as that fixed by the contract before breach.

The Statute gives damages at the rate of ten per cent. per annum for the withholding of money generally. But for withholding of money which bears a higher rate of interest by contract, a corresponding damage for withholding is allowed.

And that higher interest is allowed although the contract itself does not provide for such higher rate after maturity of the debt.

A Court of Chancery may allow the mortgagee a per centage for the expense of collecting his mortgage when the instrument provides for such allowance.

If the mortgagee is compelled to file a cross bill, in a case where he is made defendant, to collect his mortgage debt, he will be entitled to the same per centage as if he had filed an original bill.

The allowance for a foreclosure suit should not always be the full amount mentioned in the mortgage, but a reasonable amount not exceeding that provided for. In this case there is nothing to show the allowance of ten per cent. was unreasonable.

PER BEATTY, J.—A Court of Equity may take judicial notice of what is a reasonable fee for foreclosing a mortgage in such Court. Ten per cent. on the amount of the mortgage was, in this case, unreasonable, and the Court should have reduced the allowance.

APPEAL from a decree of the District Court of the First Judicial District, Storey County, Hon. R. S. MESICK presiding.

On the twelfth of August, 1863, the owners of certain property in Virginia City, executed to M. Abrams a mortgage to secure the payment of $6,000 and interest. $3,000 were loaned, and note taken at the time the mortgage was executed, and M. Abrams agreed to advance the other three thousand as soon as certain improvements were made on the mortgaged property. In due time the other three thousand were advanced, and a second note executed. In October, 1863, the owners of the property executed a second mortgage thereon. The present plaintiff is the assignee of that mortgage. Some days subsequent to the execution of the second mortgage M. Abrams assigned a half interest in his mortgage to S. Abrams. At a still subsequent date the mortgagors placed the property in the hands of the Abrams, or their agent, to collect the rents, keep down the interest on both mortgages, and pay the surplus of the rents to other purposes, as directed by the mortgagors. The property so remained in the hands of the Abrams, or their agent, up to the trial of this case. The suit was brought by the assignee of the second mortgage, making the Abrams defendants. They set up their prior mortgage, and asserted that the whole $6,000, principal, and a portion of interest on their mortgage, was due and unpaid. The plaintiff claimed that the money retained by the Abrams out of the rents not only paid all the interest on their notes and mortgage, but a large portion of the principal.

McLane *v.* Abrams *et al.*

The note and mortgage given to Abrams called for interest at three and one-half per cent. per month, and at that rate they had retained it out of the rents.   The plaintiff claimed that after the notes to Abrams became due, they only had a right to exact interest at the rate of ten per cent. per annum; that the amount they retained over and above ten per cent. per annum, for interest after the notes were due, should be applied as a credit on the principal.   There was also a further controversy as to what allowance, if any, should be made to the Abrams for their counsel fees, etc., expended in enforcing their mortgage and collecting the $6,000 due to them.

The following is a copy of the first note given to M. Abrams; the other is of similar import.

"VIRGINIA CITY, Aug. 12th, 1863.

"One year from date, for value received, we jointly and sever-
"ally promise to pay to M. Abrams, or order, the sum of three
"thousand dollars, also interest thereon at the rate of three and one-
"half per cent. per month, said interest to be paid monthly, at the
"end of each month, calculating from this date; and if said inter-
"est is not so paid, then the whole sum, principal and interest, shall
"become at once due, payable, and collectable; and in case said
"principal and interest, or either, are not paid when due, and the
"holder hereof shall have occasion to bring suit for collection of the
"moneys due hereon, and shall bring such suit, then we promise to
"pay the further sum of ten per cent. upon the whole sum due or
"unpaid, for attorneys' fees and commissions upon said collection.
"This note is given for a loan made to us of three thousand dollars
"in the gold coin of the United States, and all payments to be
"made in the gold and silver coin of the United States, and not
"otherwise.

"GUSTAVE BAYREUTHER,
"ALBERT BAYREUTHER.

"In presence of
"JAS. F. HUBBARD."

The Court below held that the Abrams were entitled to interest at three and one-half per cent. per month until paid, and ten per cent. upon the amount due for counsel fees, etc.

The plaintiff (assignee of the second mortgage) appeals.

*Williams & Bixler*, for Appellant.

The Abrams notes bore interest at the rate of three and one-half per cent. per month up to maturity ; after that they bore only legal interest—ten per cent. per annum. (*Brewster* v. *Wakefield*, 22 How. U. S. 118 ; *Ludwick* v. *Huntsinger*, 5 Watts & Serg. 59– 60 ; *Henry* v. *Thompson*, 1st Minor, Alab. 209 ; *United States* v. *Chapin*, 9 Wend. 471.)

*Kohler* v. *Smith*, (2 Cal. 597) has been overruled by the subsequent case in 22 Howard, United States.

No consent or new contract of the mortgagors could continue the rate of interest on the prior mortgage to the prejudice of the second mortgagees. (*Lord* v. *Morris*, 18 Cal. 490 ; *McCarthy* v. *White*, 21 Cal. 495 ; *Grattan* v. *Wiggins*, 23 Cal. 16 ; *Coster* v. *Brown*, 23 Cal. 143 ; *Gamble* v. *Voll*, 15 Cal. 507–510.)

Even if the mortgagors had the power to make a contract with Abrams for the continuance of their interest at three and one-half per cent., they never did in fact make it. The contract was to allow them to collect the rents and pay *their* interest. That is, to pay what they were legally entitled to. If any such contract was attempted to be made, it was without consideration and void. There was no agreement for forbearance. Mere forbearance, when the creditor is not bound by any contract to forbear, is not a sufficient consideration to support a promise. (Chitty on Contracts, 37.)

The Abrams were not entitled to counsel fees under the terms of their contract. They were to have such fees allowed them " if they have occasion to bring suit * * * and shall bring suit." Now the suit is not brought by them, but by the junior mortgagee.

*Quint & Hardy*, for Respondents.

The Statute of this State is very different from that of the Territory of Minnesota, on which the decision in 22 Howard turned. The interest having been paid by the mortgagors cannot be recovered in this action.

Our Statute.is a copy of the California Statute. That had received a judicial construction by the highest Court of that State, before the adoption thereof by this State. In copying it we adopted the California construction.

On the point of recovering back interest once paid, respondents cited the following authorities. (*Spencer* v. *Ayrault*, 10 N. Y. [6

Sel.] 202 ; *N. Y. Life Ins. & Trust Co*. v. *Manning et al*., Sand. Ch. R. 3d, 58 ; *Kellogg* v. *Hickok*, 1 Wend. 521 ; *Mowry* v. *Bishop et als*. 5 Paige, 98 ; *Reab* v. *McAlister*, 8 Wend. 109 ; 4 Wend. 483 ; 3 Comstock, 502 ; 7 Barbour, 235 ; *Miller* v. *Burroughs*, 4 Johns. Ch. 436 ; *Van Buren* v. *Grossbeck*, 4 Cow. 496.)

Opinion by LEWIS, C. J., BROSNAN, J., concurring.

The principal questions involved in this appeal are : first, does a promissory note, providing for the payment of three and a half per cent. per month interest, but which does not, in express terms, continue that rate of interest after the maturity of the note, bear the stipulated rate after maturity, or only the legal rate ; and, second, are the defendants entitled to counsel fees and commissions under the stipulations of the note.   The note or instrument upon which these questions arise reads as follows :

" VIRGINIA CITY, August 12, 1863.—One year from date, for value received, we jointly and severally promise to pay to M. Abrams, or order, the sum of three thousand dollars ; also interest thereon at the rate of three and one-half per cent. per month, said interest to be paid monthly at the end of each month, calculating from this date ; and if said interest is not so paid, then the whole sum, principal and interest, shall become at once due, payable, and collectable ; and in case said principal and interest, or either, are not paid when due, and the holder hereof shall have occasion to bring suit for collection of the moneys due hereon, and shall bring such suit, then we promise to pay the further sum of ten per cent. upon the whole sum due and unpaid for attorneys' fees and commissions upon said collection.   This note is given for a loan made to us of three thousand dollars in the gold coin of the United States, and all payments to be made in the gold and silver coin of the United States, and not otherwise."

It is urged, on behalf of the appellant, that upon this note interest at the legal rate only can be recovered after maturity, and the following authorities are relied on in support of this position : *Brewster* v. *Wakefield*, 22 How. 118 ; *Ludwick* v. *Huntsinger*, 5 Watts and Serg. 59 ; *Henry* v. *Thompson*, 1 Minor, 209.

To the correctness of these decisions, under the statutes upon which they were made, we give our ready assent. It is a familiar rule of the law of damages (in the absence of express statute providing a different rule) that upon the breach of a contract for the payment of money the measure of damages shall be the legal interest on the sum due to the plaintiff from the time of the breach ; and notwithstanding parties may have agreed upon a different rate of interest in the investment, it would not by any means be presumed that such interest was to continue after the maturity of the instrument, unless the parties to it expressly contracted that it should, because it could never be presumed that the promise to pay interest extended beyond the time when the principal was agreed to be paid. After the maturity of a promissory note, the express promise or undertaking of the maker ceases, and the instrument itself, as it were, becomes *functus officio*. As in the absence of express provisions it could not be presumed that the promise of a party extends beyond the time limited in the written contract for payment, the statutes existing in all the States give the party a remedy which otherwise he probably would not have by allowing him to recover legal interest on his debt from the time of its maturity until it is collected, as damages for the breach of contract. But it will not be denied that, when not prohibited by usury laws, an agreement between parties, fixing a higher rate of interest or damage after maturing, would be enforced. So too, it must be admitted that it is perfectly competent for the legislature of any State to provide by law that the same rate of interest agreed upon by the parties to be paid before the debt becomes due, shall be allowed after its maturity, instead of the legal rate. As it is admitted that the makers of the note and mortgage in this case have not expressly promised to pay any rate of interest at all after the maturity of the debt, it becomes necessary to determine whether the statute of this State does in fact make the interest agreed upon in writing by the parties to be paid, without expressly mentioning that it shall be paid after maturity, the measure of damage to be allowed after the maturity of debt, or whether, to authorize a recovery of more than the legal rate of interest after a debt becomes due, it is necessary that there be an express promise to pay more than the legal rate *after maturity, or until the debt is paid.*

The result of our examination of the statute is, that all instruments whereby interest is agreed to be paid shall bear the same rate after maturity and until the debt is paid as they do before. It is provided by section four, page 100 of the Laws of 1861, that "*when there is no express contract in writing* fixing a different rate of interest, interest shall be allowed at the rate of ten per cent. per annum for all moneys after they become due on any bond, bill, or premium note," etc. And section five declares that " parties may agree in writing for the payment of any rate of interest whatever on money due, or *to become due* on any contract. Any judgment rendered on such contract shall conform thereto, and shall bear the interest agreed upon by the parties, and which shall be specified in the judgment." Giving to the language of this fourth section a liberal, and its most natural construction, the purpose sought to be accomplished by the framers seems to have been simply to establish an uniform rate of interest in all those cases where there is no express contract in writing fixing a different rate. It is only where there is no contract in writing fixing a different rate that interest at ten per cent. per annum is provided for. By necessary implication, where there is a contract in writing fixing any rate of interest, that rate shall prevail in all cases. But the learned counsel for appellant claims a more restricted and, what seems to us, an unwarrantable construction of the sections above referred to, which is, that the words, " when there is no express contract fixing a different rate of interest," must be taken to mean a contract whereby a different rate of interest is expressly agreed to be paid *after maturity*, as for instance, *until the principal is paid*. It is true, the language of the fourth section might bear this interpretation ; not, however, without restricting the words employed more than we can see any reason for. The language employed is sufficiently general to include all contracts wherein the parties have fixed a rate of interest, though there be no express agreement that that rate shall continue after the maturity of the principal. Why, then, hold that the Act refers only to those contracts wherein the parties have expressly provided that the interest fixed by them shall continue after the maturity of the debt, or until it is paid ? The provisions of the fifth section cannot be made to harmonize with such construction. It declares that the " parties may agree in writing for the payment of any rate

of interest whatever on money due or to become due," and the judgment rendered on such contract shall conform thereto, and shall bear the interest agreed upon by the parties. These general words are certainly sufficiently comprehensive to include all contracts wherein the interest to be paid is fixed in the instrument, though not expressly to be continued after its maturity.

The judgments here referred to are. those rendered upon contracts, wherein the parties have agreed for the payment of some specified rate of interest; not where they have agreed upon its payment after the maturity of the debt. There is nothing in the language of the Act to justify its restriction to any peculiar class of contracts. But on the contrary it seems expressly to comprehend not only those contracts where interest is agreed to be paid before the debt becomes due, but also where it is fixed after its maturity. Where the interest is agreed upon in writing for money due or to *become due*, the judgment shall conform to the contract, and 'shall bear the same rate of interest. The agreement to pay a certain rate of interest on money *to become due* is certainly not an agreement to pay it after it becomes due, and yet it is clear the judgment on such an agreement would bear the rate of interest agreed on by the parties. If the judgment on such contract is to bear the rate of interest agreed on by the parties, it will hardly be claimed that after maturity and before judgment, the debt shall draw a different rate of interest. The provision that the judgment shall bear the rate of interest agreed on by the parties in the contract is clear evidence that it was the intention that such interest should continue from the time fixed in the contract until the debt is paid. There is another and very cogent reason why this construction should be adopted. It is a rule of construction too familiar to require the citation of authorities, that where one State adopts the statute of another, it is adopted with the construction placed upon it by the highest Court of judicature of the State from which it is taken. The reason upon which this rule rests, gives it an importance and weight which should not be disregarded except upon the most urgent reasons. When the Legislature of one State adopts the laws of another, it is presumed to know the construction placed upon those laws in the State from which they are adopted, and therefore that it adopts that construction with the law—that it

incorporates into the law the construction which is placed upon it at the time it is adopted. Hence, for the Courts of the State adopting such laws to disregard such construction would be almost as unjustifiable as to disregard the clearly expressed will of the Legislature itself. Before the Legislature of the Territory of Nevada adopted the Act under consideration, it had received the construction which we have placed upon it from the Supreme Court of the State from which it was taken. (Kohler v. Smith, 2 Cal. 597.)

We therefore consider ourselves bound by that decision, in the absence of clear and convincing reasons that its authority should not be respected. But much weight is given to the fact that the case of Brewster v. Wakefield, 22 How. 118, was a later case than Kohler v. Smith, and that the latter case was virtually over-ruled thereby. True, the case of Brewster v. Wakefield is the later case, but we cannot see that it in the least impairs the author-ity of Kohler v. Smith, for though the first and second sections of the Minnesota statute in effect correspond with the fourth section of our Act, yet there seems to have been nothing in the Minnesota statute which corresponds with the fifth section of our Act, which section we think clearly favors the construction adopted by the Supreme Court of California. The case of Brewster v. Wakefield is therefore not entitled to the same weight in this Court as that of Kohler v. Smith; and in view of the fact that in the latter case the Supreme Court of California gave a construction to a statute sub-sequently adopted verbatim by this State, we deem it incumbent upon us to give it the same construction, and to hold that the defendants are entitled to the interest agreed on in the note and mortgage until the debt is discharged. And to a qualified extent we think the Court below held correctly on the second point. There is no doubt but that it is perfectly competent for parties to stipulate in a mortgage that a certain sum, or a certain per centage shall be allowed the mortgagee for attorneys' fees or expenses, if if he be compelled to bring suit to recover his debt. (Cox v. Smith, January term, 1865.) By contract in this case, it is agreed that "in case said principal and interest, or either, are not paid when due, and the holder hereof shall have occasion to bring such suit, then we promise to pay the further sum of ten per cent. upon the

whole sum due and unpaid for attorneys' fees and commissions upon said collection." It is claimed by appellant that the defendants have not been compelled to bring suit; that filing a cross bill, as they have done in this case, is not bringing a suit. It cannot be denied that they have not brought suit in the strict sense of the words, but a reasonable construction must be given to the language employed by the parties, and effect given to their real intention, if it can be done without violence to the language employed by them. Now the intention of these parties is obvious. It was to provide for reimbursing the mortgagee for any expense which he is necessarily put to in collecting his debt. In this case they are compelled to come into Court to protect themselves; they file a cross bill which places them in the same position as if they had filed their bill for foreclosure.

So they are compelled to incur the expense which the parties seem to have provided for by the allowance of ten per cent. upon the amount due and unpaid. But in all cases where attorneys' fees are provided for in instruments of this character, only a reasonable sum should be allowed. The entire sum stipulated should not be allowed to parties where it would be an exorbitant or unreasonable fee. So this Court decided in the case of Cox v. Smith, above referred to.

There is nothing in the record in this case which would authorize us to say that ten per cent. is an unreasonable compensation for counsel. The judgment must therefore be affirmed.

By BEATTY, J.

I concur in the foregoing opinion, with this exception. I think a Court of Chancery may judicially notice what is a reasonable fee for conducting business before such Court, and when an extravagant allowance is made by the terms of a mortgage for the foreclosure of the same, that such Court should treat the allowance named merely as a penalty, and make such reasonable allowance only as a prudent man would pay for a foreclosure if the money had to come out of his own pocket and not that of the mortgagor. In this case I think ten per cent. was an extravagant allowance. I think the Court below should have only allowed judgment to go for a reasonable amount not exceeding ten per cent. The Judge pre-

siding might have fixed it either upon his own sense of what was right, or he might have inquired of counsel in his Court, either under oath or not, according to his discretion.