JOSEPH F. SANSON INVESTMENT COMPANY, Appellant, v. 268 LIMITED; TRUSTEE IN BANKRUPTCY, Respondent.

No. 20118

July 18, 1990                    795 P.2d 493

*Gordon & Silver* and *Candace C. Carlyon,* Las Vegas, for Appellant.

*Joshua M. Landish,* Las Vegas; *Leonard A. Wilson,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Appellant Joseph F. Sanson Investment Company (Sanson) sold an apartment complex to respondent 268 Limited. Sanson retained a security interest in the property, which was written into a deed of trust. The deed of trust (1) incorporated by reference NRS 107.030(7) regarding attorney's fees in the event of default and (2) specified five percent of the balance remaining at the time of default as attorney's fees.

Subsequently, 268 Limited filed a Chapter 11 petition in bankruptcy. As a result, 268 Limited defaulted on its obligation to Sanson. The apartment complex was sold for $1,000,000 in excess of the amount needed to pay the obligation. Sanson was billed $13,732.00 by its counsel for the legal services related to the transaction with 268 Limited. Matter of 268 Ltd., 789 F.2d 674, 677 (9th Cir. 1986). Sanson applied to the bankruptcy court for $197,500.00 in attorney's fees based on the clause in the deed of trust setting attorney's fees at five percent of the balance. The bankruptcy court concluded that the requested amount was unreasonable and, pursuant to section 506(b) of the Bankruptcy Code, 11 U.S.C., awarded Sanson $20,000.00. Sanson appealed the

bankruptcy order to several federal courts,[1] all of which affirmed the bankruptcy order. Pursuant to the procedure set forth in NRAP 5,[2] the United States Court of Appeals for the Ninth Circuit in In re Limited 268, 877 F.2d 804, 806 (9th Cir. 1989), certified the question of whether NRS 107.030(7) permits parties to a deed of trust to recover stipulated attorney's fees without regard to the reasonableness of the fees. This court accepted certification and subsequently requested briefing by the parties.

This appeal specifically presents the issue of whether Sanson should be entitled to receive $197,500.00 in attorney's fees when Sanson only incurred $13,732.00 in actual expenses. The wording of NRS 107.030(7)[3] regarding attorney's fees is ambiguous. NRS 107.030(7) first requires a trustee, upon sale of the encumbered property, to pay expenses of the sale "together with the reasonable expenses of the trust, including counsel fees," but then permits the parties to a deed of trust to recover "in an amount equal to ............................. percent of the amount secured thereby and remaining unpaid, . . . ."

---

[1] Sanson appealed to the United States District Court for the District of Nevada which affirmed the order of the bankruptcy judge. Sanson further appealed the order to the United States Court of Appeals for the Ninth Circuit. The United States Court of Appeals for the Ninth Circuit affirmed in part the holding stating that section 506(b) preempts state law governing the availability of attorney's fees as a secured claim, but remanded the case to allow Sanson to attempt to recover the balance of $197,500.00 as an unsecured creditor, expressing no opinion on the enforceability under governing state law of the deed of trust's attorney's fees provision. In the Matter of 268 Limited, 789 F.2d 674, 678 (9th Cir. 1986). On remand the bankruptcy court again denied Sanson's $197,500.00 claim, holding that NRS 107.030(7) limits attorney's fees in a deed of trust to a reasonable amount. In re 268 Limited, 75 B.R. 37 (Bankr.D.Nev. 1987). Sanson then appealed to the United States Appellate Panel for the Ninth Circuit which affirmed the bankruptcy decision. In re 268 Limited, 85 B.R. 101 (9th Cir. BAP 1988). Finally, Sanson appealed the decision of the Bankruptcy Appellate Panel to the United States Court of Appeals for the Ninth Circuit.

[2] NRAP 5 provides in part:

> The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court, when requested by the certifying court, if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

[3] NRS 107.030(7) provides:

> That the trustee, upon such sale, shall make (without warranty), execute and, after due payment made, deliver to purchaser or purchasers, his or their heirs or assigns, a deed or deeds of the premises so sold which shall convey to the purchaser all the title of the grantor in the

In State v. Woodbury, 17 Nev. 337, 343, 30 P. 1006, 1008 (1883), this court said "[w]here a statute is clear, plain and unambiguous, we have repeatedly declared that there is no room for construction and the law must be followed regardless of results." NRS 107.030(7), however, does not appear to be clear or plain. To the contrary, it contains two contradicting clauses. One clause allows recovery of reasonable expenses and the other clause authorizes the parties to agree on a percentage and calls for enforcing that stipulated percentage.

"If the language [of a statute] is capable of two constructions, one of which is consistent . . . with the evident object of the legislature in passing the law, that construction must be adopted which harmonizes with the intention." Recanzone v. Nevada Tax Commission, 92 Nev. 302, 305, 550 P.2d 401, 403 (1976) (quoting State of Nevada v. Cal. M. Co., 13 Nev. 203, 217 (1878)). There are no Nevada cases that have interpreted this statute. Also, there is no legislative history on the statute because the statute was enacted in 1927, and amended in 1967.[4] Therefore, in ascertaining the intent of the legislature, we are forced to look to the words of the statute and the purposes for its enactment. *See* State ex rel. Bartlett v. Brodigan, 37 Nev. 245, 255, 141 P. 988, 991 (1914) (TALBOT, C. J., concurring).

The United States Bankruptcy court in In re 268 Ltd., 75 B.R. 37 (Bankr.D.Nev. 1987), looked at the words of the statute and purposes of the enactment and stated:

> trust premises, and shall apply the proceeds of the sale thereof in payment, *firstly, of the expenses of such sale, together with the reasonable expenses of the trust, including counsel fees, in an amount equal to* ............... *percent of the amount secured thereby and remaining unpaid, which shall become due upon any default made by grantor in any of the payments aforesaid;* and also such sums, if any, as trustee or beneficiary shall have paid, for procuring a search of the title to the premises, or any part thereof, subsequent to the execution of the deed of trust; and in payment, secondly, of the obligation or debts secured, and interest thereon then remaining unpaid, and the amount of all other moneys with interest thereon herein agreed or provided to be paid by grantor; and the balance or surplus of such proceeds of sale it shall pay to grantor, his heirs, executors, administrators or assigns.

(Emphasis added.)

[4]There are no committee minutes before 1965 and not all committees kept minutes between 1965 and 1973. In 1973 the Assembly adopted a rule to keep minutes of proceedings before standing committees, and the Senate adopted a similar rule in 1977. Southwick and Olmsted, *Researching Legislative History in Nevada,* 54 N.B.J. 4 (1989).

The language of section 107.030(7) indicates that the attorney's fees are limited to a reasonable amount. In section 107.030(7), "reasonable" modifies "expenses of the trust" and counsel fees are *included* among the "expenses of the trust". The legislature's intent is clearly to include attorney's fees among the expenses of the trust. The expenses of the trust that, pursuant to the covenant, are to be paid from the sale proceeds, must be reasonable. The legislature could easily have indicated that the attorney's fee provision was not among the expenses of the trust. For instance, it could have used the word "plus" instead of the word "including". The legislature, however, used the word "including". Accordingly, although the statute allows, and in fact encourages, the parties to designate a percentage of the unpaid principal as counsel fees, those fees, like the other expenses of the trust, must be reasonable.

The evident purpose of section 107.030(7) also suggests that the attorney's fees allowed under that section are limited to a reasonable amount. The purpose of such an attorney's fee provision is to compensate the secured party for the costs of the foreclosure. *See, e.g., McLane v. Abrams*, 2 Nev. 199, 208 (1866) (analyzing a similar, non-statutory provision in a note).

*Id.* at 39-40 (emphasis in original).

The bankruptcy court's interpretation of NRS 107.030(7) is sound, and the proper way to interpret the word "reasonable" is to apply it to the award of attorney's fees as well. According to the billing statements submitted with the original fee application, Sanson was billed $13,732.00 by its counsel for the legal services related to 268 Limited in foreclosing the deed of trust. The bankruptcy court, in spite of the amount billed, awarded Sanson $20,000.00 in attorney's fees. Sanson has been asking for $197,500.00 for attorney's fees in regard to the deed of trust. The fees sought in the present action are more than fifteen times the amount actually billed. This amount is unreasonable.

There are two Nevada cases which deal with circumstances similar to those here. Cox v. Smith, 1 Nev. 161 (1865) and McLane v. Abrams, 2 Nev. 199 (1866). The promissory notes in *Cox* and *McLane* allowed the creditor, upon foreclosure, to recover ten percent of the unpaid balance as attorney's fees. The *Cox* note contained an attorney's fees provision similar to NRS 107.030(7). It provided:

> [I]n case . . . [a] holder hereof shall commence a suit to enforce the [note obligation], then it shall be lawful for the said payee or the holder hereof to have and demand upon the same ten (10) percent. [sic] upon the amount which shall be recovered thereon as a reasonable indemnity for attorney and counsel fees . . . .

*Cox,* 1 Nev. at 165. The court reasoned:

> We doubt extremely the policy of enforcing *any* [emphasis in original] contract whereby the mortgagor makes himself responsible for counsel fees.
>
> We think it has a tendency to encourage extortionate and oppressive contracts, and is at war with the best interests of society. But all the cases we find reported on this subject hold that a *reasonable* [emphasis in original] counsel fee may be contracted for in such cases, and a Court of equity will enforce the agreement.
>
> In all the cases called to our attention in which this point has arisen, the Courts have allowed *the* [emphasis in original] counsel fee charged, but have generally used some expression indicating that the charges allowed were reasonable, and that if unreasonable counsel fees were allowed, *the Court would interpose its authority to protect the mortgagor* [emphasis added].

*Id.* at 172.

The court in *Cox* enforced the attorney's fees clause because it found the "amount [was] not . . . so extravagant as to show that it was intended as a penalty to be held *in terrorum* [sic] over the mortgagor, . . . ." *Id.*

Similarly, the *McLane* promissory note provided that

> in case said principal and interest, or either, are not paid when due, and the holder hereof shall have occasion to bring such suit, then we promise to pay the further sum of ten per cent. [sic] upon the whole sum due and unpaid for attorneys' fees and commissions upon said collection.

*McLane,* 2 Nev. at 207-08. The court stated in dealing with the attorney's fees issue that

> [I]n all cases where attorneys' fees are provided for in instruments of this character, only a reasonable sum should be allowed. *The entire sum stipulated should not be allowed to parties where it would be an exorbitant or unreasonable fee* . . . .

There is nothing in the record in this case which would authorize us to say that ten per cent. [sic] is an unreasonable compensation for counsel.

*Id.* at 208 (emphasis added).

Although the record in *McLane* did not show that ten percent was unreasonable compensation for counsel, the record in the present case clearly indicates that five percent in attorney's fees, $197,500.00, is patently unreasonable when Sanson's actual attorney's fees were only $13,732.00. Therefore, NRS 107.030(7) should be read to mean that parties may stipulate in a deed of trust that a certain percentage shall be allowed for attorney's fees as long as that percentage is reasonable.

Sanson next argues that an attorney's fees provision is simply not a liquidated damages provision and should not be analyzed as such. Sanson further argues that even if this court were to find the attorney's fees provision to be a liquidated damages provision, this court should enforce the provision. We disagree.

Liquidated damages have been defined as the sum which a party to a contract agrees to pay if he/she breaks some promise and which, having been arrived at by a good faith effort to estimate the actual damages that will probably ensue from breach, is recoverable as agreed-upon damages if breach occurs. *See* In re Plywood Co. of Pa., 425 F.2d 151, 154 (3d Cir. 1970). The provision in the deed of trust adopting NRS 107.030(7) constitutes a liquidated damages clause because the parties agreed to pay for reasonable expenses, including attorney's fees, incurred during a trustee's sale of property in the event of a default. *See* In re 268 Limited, 85 B.R. 101 (9th Cir. BAP 1988). A liquidated damages clause is prima facie valid unless the challenging party proves its application amounts to an unenforceable penalty. Haromy v. Sawyer, 98 Nev. 544, 546-547, 654 P.2d 1022, 1023 (1982); Silver Dollar Club v. Cosgriff Neon, 80 Nev. 108, 389 P.2d 923 (1964). "In order to prove that a liquidated damage clause constitutes a penalty, the challenging party must persuade the court that the liquidated damages are disproportionate to the actual damages sustained by the injured party." *Haromy,* 98 Nev. at 547, 654 P.2d at 1023 (citation omitted).

The record shows that Sanson's counsel submitted an affidavit stating that Sanson was billed $13,732.00 for services related to the 268 Limited, and the stipulated amount was $197,500.00, which is fifteen times the amount that was actually billed. In comparing the actual attorney's fees that Sanson incurred as a

result of 268 Limited's default with the amount under the deed of trust, it appears that the stipulated amount is greatly disproportionate. Unless modified by reasonableness, the five percent contained in the deed of trust would operate as a penalty clause. In such cases, courts are reluctant to enforce penalty clauses. *See* Beacon Plastic & Metal Products, Inc. v. Corn Products Co., 293 N.Y.S.2d 429 (Sup.Ct. 1968).

For reasons set forth above, we affirm the interpretation of the federal court and hold that NRS 107.030(7) permits parties to stipulate in a deed of trust that a certain percentage shall be allowed for attorney's fees as long as that percentage is reasonable.