OPINION
 

 Per Curiam:
 

 FACTS
 

 Appellant/cross-respondent Puebla Estates (“Puebla”) is a Nevada general partnership comprised of David Mason, George Randal, Madeline Davis, James Dunn, John Mason, Melvin Steinberg, Thomas Bohnett, Robert Fitzgerald and Joseph Royce. Puebla owned thirty-five four-plex apartments which it had purchased in March 1988 with the intent of selling them. In August
 
 *1155
 
 1988, David Mason (“Mason”), managing partner, arranged for eighteen units to be auctioned by Eric Nelson Auctioneering. The auction was advertised in newspapers of general circulation in Las Vegas; Orange County, San Francisco, and Los Angeles, California; and Phoenix, Arizona. The advertisements noted the location of the units near Nellis Air Force Base, and some advertisements stressed the “prime tenants,” and high income that was possible due to the shortage of Nellis housing.
 

 Respondent/cross-appellant Manouchehr Fakhimi (“Fakhimi”) and his real estate advisor, Mike Auerbach (“Auer-bach”), inspected the units the day before the auction, which was held on October 4, 1988. Fakhimi was advised prior to the auction that the property was being sold “as is” and that the buyer was responsible for verifying any information regarding the units.
 

 Fakhimi was the highest bidder for six of the units, and his bid was accepted by Mason on behalf of Puebla. Fakhimi then signed a standard purchase agreement and earnest money receipt for each of the properties and delivered a check for $69,700 to the auctioneer. The check represented ten percent of the total purchase price for all six units. Paragraph six of the agreement stated, “If BUYER defaults in his performance under this contract, SELLER may elect to retain the deposit as reasonable liquidated damages for such default.” In his deposition, Fakhimi stated that he understood that this paragraph meant that if he failed to perform, Puebla could keep his deposit. Mason signed the standard purchase agreement and earnest money receipts and returned them to Eric Nelson, the selling agent, on October 4, 1988.
 

 Approximately two weeks later, Fakhimi stopped payment on the check after learning from Auerbach that a wing of Nellis Air Force Base was possibly scheduled to close. Fakhimi did no independent investigation prior to stopping payment, nor did he contact either Mason or the auctioneer.
 

 After Fakhimi defaulted on the agreement, Puebla resold the units to the next highest bidder at a loss of $23,000. Mason spent approximately sixty hours contacting other buyers, negotiating sales, and arranging financing.
 

 Puebla filed a complaint against Fakhimi requesting an award of the liquidated damages, attorney’s fees and costs. In the alternative, Puebla sought general and special damages. Fakhimi answered with seven affirmative defenses, including fraudulent concealment of material facts, and counterclaimed for attorney’s fees.
 

 The case was presented to the court on statements of fact from
 
 *1156
 
 both parties. The district court held that Fakhimi breached the standard purchase agreements by not completing the purchase of the six units. However, the court found that liquidated damages of $69,700 were disproportionate to the actual damages of $38,000. Therefore, the liquidated damages provision was an unenforceable penalty. In the alternative, the court awarded Puebla $38,000 which represented the $23,000 loss from the resale and $15,000 as payment for the time Mason spent reselling the units.
 

 Puebla now appeals the district court’s decision that the liquidated damages provision in the purchase agreement was an unenforceable penalty. Fakhimi appeals the district court’s award of damages to Puebla and its refusal to allow him to rescind the contract. We address each argument in turn.
 

 DISCUSSION
 

 We turn first to the issue of whether the liquidated damages provision in this contract was an unenforceable penalty. Liquidated damages are the sum which a party to a contract agrees to pay if he fails to perform, and which, having been arrived at by a good faith effort to estimate the actual damages that will probably ensue from a breach, is recoverable as agreed-upon damages should a breach occur. Joseph F. Sanson Investment v. 268 Limited, 106 Nev. 429, 435, 795 P.2d 493, 496-97 (1990).
 

 However, liquidated damages provisions may amount to unenforceable penalties.
 

 As distinguished from liquidated damages, the term “penalty,” as used in contract law, is a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment. . . . [The] distinction between a penalty and liquidated damages is that a penalty is for the purpose of securing performance, while liquidated damages is the sum to be paid in the event of non-performance.
 

 22 Am.Jur.2d
 
 Damages
 
 § 684 (1980).
 

 This court has held that liquidated damages provisions are generally prima facie valid, and the party challenging the provision must establish that the provision amounts to a penalty. Haromy v. Sawyer, 98 Nev. 544, 546, 654 P.2d 1022, 1023 (1982). In order to prove that such a provision constitutes a penalty, the challenging party must persuade the court that the
 
 *1157
 
 liquidated damages are disproportionate to the actual damages sustained by the injured party.
 
 Id.
 
 at 547, 654 P.2d at 1023.
 

 Puebla argues that the liquidated damages provision in the purchase agreement is enforceable. It maintains that the stipulated amount was a reasonable forecast of damages since its out-of-pocket loss plus the additional time lost could have been more than ten percent. Puebla claims that damages upon breach were not possible to accurately estimate at the time of contracting because it had no way of predicting when resale might occur or the resale price of the units.
 

 Fakhimi argues that the liquidated damages were disproportionate to the actual loss sustained because the actual damages were one-third of the liquidated damages. Therefore, he claims, the provision was an unenforceable penalty.
 

 We agree with Puebla that damages in the event of breach of a real estate sales contract are very difficult to estimate with any certainty. Since it was not possible for Puebla to accurately determine what actual damages would be in the event of a breach, the provision fits this court’s requirements for the validity of liquidated damages provisions as stated in
 
 Haromy.
 
 Fakhimi did not rebut the presumption that the liquidated damages clause was valid. Fakhimi did not prove that the application of the liquidated damages clause amounts to an unenforceable penalty by demonstrating that the liquidated damages are disproportionate to the actual damages.
 

 A number of out-of-state courts have also found that liquidated damages provisions are enforceable, particularly in the area of real estate sales contracts.
 
 See, e.g.,
 
 Hooper v. Breneman, 417 So.2d 315 (Fla.Dist.Ct.App. 1982) (13.3 percent of purchase price); Gomez v. Pagaduan, 613 P.2d 658 (Haw.Ct.App. 1980); Curtin v. Ogborn, 394 N.E.2d 593 (Ill.App.Ct. 1979) (approximately 7 percent of purchase price); Wilfong v. W.A. Schickedanz Agency, Inc., 406 N.E.2d 828 (Ill.App.Ct. 1980) (10 percent of purchase price).
 

 In view of the foregoing, we hold that the district court erred in holding that the liquidated damages provision in the instant case was an unenforceable penalty.
 

 We now turn to the question of whether a defaulting purchaser in an auction setting is entitled to a return of his deposit. This is an issue of first impression in this state. We note the following authority:
 

 [W]here it has been stipulated that the deposit shall be forfeited if the purchaser does not comply with his contract,
 
 *1158
 
 the deposit, in such an event, may not be recovered back either at law or in equity. ... It has been said that the test to be applied is that if the deposit is unreasonable in amount and the actual damages will be negligible or capable of actual measurement, the forfeiture of the deposit will not be permitted even though this is expressly agreed; but if the deposit is reasonable in amount, a provision forfeiting it in case of a breach will be enforced.
 

 7A C.J.S. § 18b
 
 Auctions and Auctioneers
 
 (1980);
 
 see also
 
 7 Am.Jur.2d
 
 Auctions and Auctioneers
 
 § 41 (1980).
 

 The above authority appears to be the prevailing view. A defaulting purchaser of real estate at auction is not entitled to a return of his earnest money deposit when there is a signed liquidated damages provision in the purchase agreement, and there is no basis for the vendee’s failure to perform.
 
 See
 
 Bailey v. Montgomery, 786 S.W.2d 594, 597-98 (Ark.Ct.App. 1990);
 
 see also
 
 Bamberg v. Griffin, 394 N.E.2d 910, 914 (Ill.App.Ct. 1979) (“The provision for earnest money in a contract, in the absence of an express provision to the contrary, will be interpreted as a provision for liquidated damages and enforced without actual proof of damages being required.”); Hamrick v. Summey, 320 S.E.2d 703 (S.C. 1984) (deposit by a prospective purchaser to ensure compliance with the sales contract is usual and customary at auctions).
 

 Fakhimi was fully aware of, and understood, the deposit/ liquidated damages provision in the purchase agreement. Accordingly, we hold that as a defaulting purchaser, Fakhimi is not entitled to a return of his deposit, particularly because the liquidated damages provision in this agreement does not amount to a penalty. Had the liquidated damages provision amounted to a penalty, Fakhimi would have been able to recover the difference between the liquidated damages and the actual damages sustained by Puebla.
 

 We now turn to the issue of rescission. Fakhimi argues that he is entitled to rescind the contract due to misrepresentations on the part of Puebla. However, Fakhimi did not seek rescission of the contract in the court below. We have stated that this court may decline to decide an issue that was not fully litigated or decided by the district court. McKay v. City of Las Vegas, 106 Nev. 203, 789 P.2d 584 (1990). Accordingly, we decline to address this issue.
 

 In addition, we do not address the propriety of the district
 
 *1159
 
 court’s award of damages to Puebla for time spent reselling the units since we hold that the liquidated damages provision in this case was not an unenforceable penalty.
 

 In conclusion, we hold that the liquidated damages provision in this contract was not a penalty and is therefore enforceable. In addition, we hold that a defaulting purchaser in an auction setting is not entitled to a return of his deposit provided the deposit does not amount to an unenforceable penalty.
 

 Accordingly, we reverse the decision of the district court regarding the enforcement of the liquidated damages provision and remand this case to the district court with instructions to enter judgment consistent with this opinion.