**Steven T. GLEZOS, Plaintiff, Appellant, and Cross–Appellee,**

v.

**FRONTIER INVESTMENTS, a Nevada limited partnership; Mark Chilton, Kathryn W. Chilton, Ward W. Chilton, Roger S. Trounday, general partners, Defendants, Appellees, and Cross–Appellants.**

No. 940730–CA.

Court of Appeals of Utah.

May 25, 1995.

Stephen G. Stoker, Stoker & Swinton, Salt Lake City, for appellant.

David D. Loreman, Elko, for cross-appellants.

Before BILLINGS, JACKSON and WILKINS, JJ.

## OPINION

BILLINGS, Judge:

Plaintiff Stephen T. Glezos appeals the trial court's enforcement of the liquidated damages provision in a contract he entered into with Frontier Investments, Mark Chilton, Kathryn W. Chilton and Ward W. Chilton, individual general partners of Frontier Investments (collectively, "Frontier"),[1] for the purchase of real property in Wendover, Nevada. Frontier cross appealed on statute of limitations grounds. We reverse and remand on the appeal and dismiss the cross-appeal for lack of jurisdiction.

---

1. Two additional defendants named in the complaint, Roger S. Trounday and Steven R. Trounday, were not served with process and did not participate in the trial.

## FACTS

Frontier is a Nevada limited partnership that owns real estate in Wendover, Nevada, including a 22–acre parcel it purchased from The Golden Wheel, Inc. in 1982. On November 1, 1984, Glezos, a resident of Salt Lake County, entered into a contract with Frontier to purchase 5.997 of the 22 acres at a price of $765,494. The contract contained the following "remedies on default" provision:

13. Remedies on default.... In the event Buyer defaults in performing this Contract or defaults in making any payment, or in performing this Contract or fulfilling any obligation hereunder, and such default is not cured within thirty (30) days after written notice by Seller specifying the default, ... Seller, at Seller's option[,] shall have the following remedies:

A. Seller shall have the right to terminate this Contract and forfeit all the rights of the Buyer hereunder and in and to the property sold and to be released from all obligations in law and in equity to convey the property sold or any portion thereof, and all payments which have been made theretofore on this Contract by the Buyer shall be forfeited to the Seller as liquidated damages for the nonperformance of this Contract....

....

D. The Buyer and Seller each agree that should either of them default in the making of payments, or the performance of this Contract, or any of the covenants or agreements herein contained, that the defaulting party shall pay all costs and expenses, including a reasonable legal fee, which may arise or accrue from enforcing this Contract, or obtaining possession of the premises covered hereby, or in pursuing any remedy provided hereunder or by the statutes of the State of Nevada, whether such remedy is pursued by filing a suit or otherwise.

Glezos made five payments under the contract, totalling $90,725.11, but failed to make a payment that became due February 20, 1985. Frontier sent notice of the default on February 21, 1985. Glezos failed to cure the default and, on March 28, 1985, Frontier terminated the contract, took possession and control of the 5.997 acres, and retained the $90,725.11 Glezos had thus far paid.

Frontier thereafter made unsuccessful efforts to resell the property. Ultimately, in late 1986, Frontier began to make partial payments on its 1982 contract with The Golden Wheel. On May 1, 1988, after a period of negotiations, Frontier agreed to transfer the 5.997 acres to The Golden Wheel in exchange for a $600,000 reduction on the balance owing on Frontier's 1982 contract with The Golden Wheel, a reduction in monthly payments under that agreement, and an extension of the final due date.

Glezos filed suit against Frontier on October 19, 1990, claiming that paragraph 13A, which purports to authorize Frontier to forfeit the full $90,725.11 as liquidated damages, is an unenforceable penalty. Frontier filed a motion to dismiss on statute of limitations grounds, which the court denied.

At a one-day trial on the liquidated damages issue, the court ruled in favor of Frontier. The court found that Frontier sustained actual damages of $176,803, or $165,494 in lost profits and $11,309 in costs incurred negotiating and enforcing the contract. Accordingly, the court concluded that, because Frontier's damages exceeded the $90,725.11 forfeited, paragraph 13A was an enforceable liquidated damages provision, not a penalty.

Glezos filed a timely notice of appeal from the judgment on January 20, 1994. Frontier filed a notice of cross-appeal from the court's denial of its motion to dismiss on February 8, 1994. Finally, in an amended judgment entered August 4, 1994, the court awarded Frontier $434.75 in costs and $24,514.75 in attorney fees. Glezos filed a notice of appeal from the amended judgment on August 26, 1994.

## ANALYSIS

### I. Jurisdiction of Cross–Appeal

Glezos argues that this court lacks jurisdiction to consider Frontier's cross-appeal because it was not timely filed. Under Rule 4(d) of the Utah Rules of Appellate

Procedure, Frontier was required to file its notice of cross-appeal "within 14 days after the date on which the first notice of appeal was filed," Utah R.App.P. 4(d),[2] or by February 3, 1994. Glezos correctly points out that when a notice of appeal or cross-appeal is untimely filed, we do not have jurisdiction to consider the appeal. *Henretty v. Manti City Corp.*, 791 P.2d 506, 511 n. 11 (Utah 1990); *Bowen v. Riverton City*, 656 P.2d 434, 436 (Utah 1982).

Frontier responds that under Rule 10(a) of the Rules of Appellate Procedure, Glezos waived his jurisdictional argument by not moving to dismiss the cross-appeal for lack of jurisdiction within ten days after Frontier filed its docketing statement. We disagree. Rule 10(a) provides:

> Within 10 days after the docketing statement is served, a party *may* move:
>
> (1) To dismiss the appeal or the petition for review on the basis that the appellate court has no jurisdiction.

Utah R.App.P. 10(a) (emphasis added). Rule 10(a) is permissive, not mandatory. We have held that

> "while defects in personal jurisdiction can be waived, subject matter jurisdiction goes to the very power of a court to entertain an action. *A lack of subject matter jurisdiction cannot be stipulated around nor cured by a waiver.* A lack of subject matter jurisdiction can be raised at any time and when subject matter jurisdiction does not exist, neither the parties nor the court can do anything to fill the void."

*Crump v. Crump*, 821 P.2d 1172, 1173–74 (Utah App.1991) (quoting *Curtis v. Curtis*, 789 P.2d 717, 726 (Utah App.1990) (citations omitted)).

Frontier next argues that we should deem its cross-appeal timely filed, or excuse its untimeliness. Frontier claims the district court originally received and stamped its notice of appeal February 2, but that the court later whited out this date and mailed the notice back to Frontier's attorney due to a $100 deficiency in the remitted filing fee. Upon its return with the proper fee, the clerk stamped the notice February 8. Frontier urges this court to ignore the February 8 stamp and reach the merits of its cross-appeal, claiming it was the court clerk's error in imparting mistaken information regarding the filing fee that caused the untimely filing.

■ This court does not have the authority to do as Frontier requests. In *State ex rel. M.S.*, 781 P.2d 1287 (Utah App.1989), we held that "[i]n determining whether a notice of appeal is timely filed and establishes jurisdiction in an appellate court, this court must be bound by the filing date indicated on the notice of appeal transmitted to it by the trial court." *Id.* at 1288. Thus, we are bound by the date stamped on Frontier's notice of cross-appeal.

■ Further, in *State ex rel. M.S.*, this court emphasized that the exclusive procedure for extending the time for filing a notice of appeal lies under Rule 4(e) of the Utah Rules of Appellate Procedure. *Id.* Rule 4(e) provides in relevant part:

> The trial court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by Paragraph (a) of this rule.[3]

Utah R.App.P. 4(e). Thus, Frontier's remedy upon having its notice of cross-appeal returned was to file a motion to extend time with the district court. This court cannot consider such motions, or grant such extensions, on appeal. *State ex rel. M.S.*, 781 P.2d

---

2. The full text of Rule 4(d) provides:

> (d) **Additional or cross-appeal.** If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by paragraph (a) of this rule, whichever period last expires.

Utah R.App.P. 4(d). Rule 4(a) provides:

> (a) **Appeal from final judgment and order.** In a case in which an appeal is permitted as a matter of right from the trial court to the appellate court, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.

Utah R.App.P. 4(a).

3. See *supra* note 2 for full text of Rule 4(a).

at 1289. We therefore have no jurisdiction to consider Frontier's cross-appeal.

## II. Enforceability of Liquidated Damages Provision

Glezos urges us to nullify paragraph 13A, under which the full $90,725.11 that Glezos paid prior to default was forfeited. We apply Nevada substantive law, as it was the law chosen by the parties to govern their contractual rights and duties. *See* Restatement (Second) of Conflict of Laws § 187(2) (Supp. 1988); *see also Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 811 (Utah 1993) (relying upon section 187(2)).

### A. Nevada Law

■ Nevada courts will enforce a liquidated damages provision unless the amount forfeited under the provision is so disproportionate to the actual damages sustained that the forfeiture constitutes a penalty. *Haromy v. Sawyer*, 98 Nev. 544, 654 P.2d 1022, 1023 (1982). In *Haromy*, the Nevada Supreme Court, citing the earlier case of *Silver Dollar Club v. Cosgriff Neon Co.*, 80 Nev. 108, 389 P.2d 923 (1964), articulated the following rule:

> Generally, liquidated damage provisions are prima facie valid. Thus, the party challenging the provision must establish that its application amounts to a penalty. In order to prove a liquidated damage clause constitutes a penalty, the challenging party must persuade the court that the liquidated damages are disproportionate to the actual damages sustained by the injured party.

*Haromy*, 654 P.2d at 1023 (citations omitted).

The parties in *Haromy* entered into a contract for the sale and purchase of an apartment building. The contract provided that if the buyer defaulted, the seller could forfeit the property, improvements, and all payments made. The buyer defaulted prior to making the final balloon payment toward the purchase price of $860,000 and thereafter sued for partial restitution of the payments and expenditures seller had retained under the liquidated damages provision. *Id.* At trial, the buyer introduced evidence that she made partial payments of $120,100.85 and expenditures of $48,500 in permanent capital improvements while in possession of the property. The buyer also presented the testimony of an expert witness, who stated that the fair market value of the property was greater than the contract price. *Id.* Conversely, the sellers "failed to present any persuasive evidence to suggest they had sustained actual damages as a result of respondent's failure to perform the contract." *Id.* at 1024. The trial court refused to enforce the liquidated damages clause and found that it was a penalty.

On appeal, the Nevada Supreme Court upheld the trial court's ruling, stating: "On this record, we cannot say the district court erred in finding the parties['] liquidated damage clause to be a penalty." *Id.* In addition, the court held that the buyer was entitled to partial restitution based on a theory of unjust enrichment.

Conversely, in *Mason v. Fakhimi*, 109 Nev. 1153, 865 P.2d 333 (1993), the Nevada Supreme court applied the general rule of *Haromy* to reverse the trial court's ruling that a disputed liquidated damages provision was unenforceable. The court accepted the trial court's findings that the seller sustained actual damages of $38,000 (representing $23,000 in lost profit on resale and $15,000 for time spent on resale) and retained liquidated damages of $69,700, but nevertheless held that the defaulting buyer had not established that the liquidated damages were disproportionate to the actual damages. *Id.*, 865 P.2d at 336. Thus, the court enforced a liquidated damages provision that resulted in a liquidated damages award three times greater than the actual damages sustained.

■ In sum, under Nevada law the enforceability of a liquidated damages provision involves a two-part analysis: (1) a determination of actual damages, if any; and (2) a determination of whether the liquidated damages are disproportionate to the actual damages.

### B. Actual Damages

We first address the trial court's determination of actual damages. Glezos asserts that Frontier sustained no actual damages as

a result of his breach.[4] However, the trial court found Frontier sustained damages of $176,803, calculated as follows:

| | |
|---|---|
| $165,494 | Difference between the November 1, 1984 purchase price of $765,-494.00 and the May 1, 1988 deed in lieu of foreclosure credit of $600,000. |
| 2,459 | Cost of transportation between Elko and Salt Lake City to negotiate and enforce the contract. |
| 5,750 | Frontier partners' hourly rates charged for negotiating and enforcing the contract. |
| 3,100 | Estimated cost of preparing maps of the 5.997 acres in connection with the contract. |

■ Glezos contends that the trial court erred as a matter of law in awarding Frontier loss of bargain damages of $165,494. Specifically, Glezos argues the law and the evidence do not support the trial court's award. "We presume a trial court's award of damages to be correct and will overturn it only if it is clearly erroneous with no reasonable support in the evidence." *Klinger v. Kightly*, 889 P.2d 1372, 1381 (Utah App. 1995).

■ Loss of bargain damages are calculated by taking the difference between the contract price of the property and the value of the property *at forfeiture*. *See Regent Int'l v. Lear*, 103 Nev. 33, 732 P.2d 861, 862 (1987); *Bellon v. Malnar*, 808 P.2d 1089, 1095–96 (Utah 1991); *Soffe v. Ridd*, 659 P.2d 1082, 1085 (Utah 1983). A property's sale price is an indication, though inconclusive, of its fair market value. *Andreasen v. Hansen*, 8 Utah 2d 370, 335 P.2d 404, 406 (1959). When there is no decrease in value between the contract price and the fair market value at forfeiture, the seller may not recover loss of bargain damages. *Bellon*, 808 P.2d at 1095–96; *Soffe*, 659 P.2d at 1085.

■ In the present case, the trial court ignored uncontroverted expert testimony that the property's fair market value at

forfeiture was $765,500, or the full contract price, relying instead on evidence that Frontier received a $600,000 credit three years later when it transferred the property back to The Golden Wheel to calculate loss of bargain damages. This was clear error. Loss of bargain damages must be measured from the time of forfeiture. Moreover, the later transaction involved extraneous matters, rendering it particularly poor evidence of the property's fair market value at forfeiture. Thus, the evidence was simply too attenuated to rebut the appraisers' opinions as to the fair market value of the property at forfeiture. We therefore conclude that, because there was no decrease in value between the contract price and the fair market value of the 5.997 acres at forfeiture, the trial court clearly erred in finding that Frontier was entitled to loss of bargain damages.

■ Glezos also objects to the trial court's finding that Frontier could recover as actual damages time spent negotiating and enforcing the contract, transportation costs incurred in negotiating the contract, and engineering costs for preparing maps in connection with negotiating the contract. We agree. At trial, Mark Chilton testified that a profit level of $165,494 was added to the November 1, 1994 contract price to provide full reimbursement to Frontier for its costs incurred in the transaction. Since the fair market value of the property at forfeiture supported the full purchase price, including built-in profit and transactional costs, Frontier was made whole when it repossessed the property. Thus, the trial court clearly erred in including redundant transactional costs in the measure of damages.

■ Frontier also presented evidence at trial of interest payable under the contract. However, the trial court made no findings on this element of damage. Case law establishes that the seller's actual damages properly include the interest or rental value of

---

4. At trial, Glezos presented the expert testimony of a real estate appraiser, who testified that the fair market value of the 5.997 acres on March 28, 1985, the date of forfeiture, remained $765,500, or the full contract price. Frontier's expert witness agreed that the value of the property at forfeiture was equal to the contract price. In addition, Glezos's expert witness testified that the 5.997 acres had no rental value while Glezos was in possession of it, which Frontier did not dispute. Finally, Glezos testified that he had paid $90,725.11 on the contract, the full amount of which was forfeited under paragraph 13A.

transferred property for the period it is in the defaulting buyer's possession. *See Haromy,* 654 P.2d 1022, 1024 (Nev.1982) (subtracting rental income from forfeited liquidated damages restored to buyer); *Warner v. Rasmussen,* 704 P.2d 559, 562 (Utah 1985). In *Warner,* the Utah Supreme Court stated: "[T]he goal in awarding the sellers damages for loss of use of the property is to grant a reasonable return on investment. In many cases, ... the parties' contract itself will be the most persuasive evidence on this issue." 704 P.2d at 562. The court clearly erred in not considering interest an element of damage suffered by Frontier. On remand the court should calculate the amount of interest to which Frontier is entitled for the period from November 1, 1984 to March 28, 1985 in considering whether paragraph 13A amounts to a penalty under the circumstances of this case.

Finally, Frontier presented evidence that it incurred $24,178.64 in attorney fees in defending the forfeiture. The trial court awarded Frontier that amount *in addition to* its liquidated damages.

■■■ Under Nevada law, reasonable attorney fees may be recovered as liquidated damages. In *Joseph F. Sanson Inv. Co. v. 268 Ltd.,* 106 Nev. 429, 795 P.2d 493 (1990), the court held that a provision in a deed of trust allowing the vendor to recover five percent of the balance remaining at default as attorney fees was a liquidated damages provision. As such, the provision was prima facie valid. However, because the liquidated amount equalled fifteen times the attorney fees actually incurred, the court concluded that the provision was an unenforceable penalty. *Id.,* 795 P.2d at 497. The Idaho Court of Appeals employed similar reasoning in *McEnroe v. Morgan,* 106 Idaho 326, 678 P.2d 595 (Ct.App.1984), a case more factually akin to the present case. In *McEnroe,* the court held that attorney fees are actual damages sustained by the sellers on the buyers' default and are properly considered in determining whether liquidated damages are proportionate to actual damages. *Id.,* 678 P.2d at 602. The court emphasized, however, that "[a] party who elects to retain liquidated damages is not entitled also to recover specific items of compensatory damages. The same reasoning ... applies to attorney fees as general damages." *Id.* at 603–04 (citations omitted).

■■■ In the present case, paragraph 13D entitles Frontier to the $24,178.64 in attorney fees it incurred, and under the above authority, those fees should be considered part of the actual damages Frontier sustained. However, the fees should not be awarded as additional compensatory damages, as this would be duplicative.

### C. Calculations and Proportionality Determination on Remand

On remand, the trial court must determine the interest value of the 5.997 acres for the time period Glezos possessed it. This amount, plus attorney fees, will be the measure of actual damages Frontier sustained. The court must then determine whether the $90,725.11 forfeited under paragraph 13A is disproportionate to Frontier's actual damages. If the trial court determines that the amounts are disproportionate, it should not enforce paragraph 13A. In that case, Glezos would be entitled to recover "the difference between the liquidated damages and the actual damages sustained." *Mason v. Fakhimi,* 109 Nev. 1153, 865 P.2d 333, 336 (1993). However, if the trial court enforces paragraph 13A, Frontier may not recover attorney fees in addition to the liquidated damages award.

### CONCLUSION

We dismiss Frontier's cross-appeal for lack of jurisdiction. We reverse the trial court's calculation of actual damages and remand for the entry of findings on interest and attorney fees. We also remand for the trial court to determine, upon recalculating the actual damages, whether paragraph 13A is an enforceable liquidated damages provision or an illegal penalty and to enter judgment accordingly.

JACKSON and WILKINS, JJ., concur.