718 P.2d 551

**LEWISTON PRE–MIX CONCRETE, INC., an Idaho corporation, Plaintiff-Respondent-Cross-Appellant,**

v.

**John B. ROHDE and Clarice A. Rohde, husband and wife, Defendants-Appellants-Cross-Respondents.**

No. 14776.

Court of Appeals of Idaho.

Aug. 2, 1985.

Review Denied Sept. 30, 1985.

642

John Reid Tait of Keeton & Tait, Lewiston, for defendants-appellants-cross-respondents.

Paul Thomas Clark and Ron T. Blewett, of Clark & Feeney, Lewiston, for plaintiff-respondent-cross-appellant.

## ON DENIAL OF PETITION FOR REHEARING

This opinion supersedes our opinion issued October 15, 1984, which is hereby withdrawn.

SWANSTROM, Judge.

Lewiston Pre-Mix Concrete, Inc. (hereinafter Lewiston) brought suit against John and Clarice Rohde to recover the value of improvements on property it formerly occupied as a lessee. The Rohdes owned that property and refused to allow Lewiston to remove the improvements. The district court held that Lewiston was entitled to remove the improvements and awarded it damages equal to the "in place" value of those improvements. The court offset that award by an award to the Rohdes for additional rent and an amount determined by the court to be a reasonable cost for cleaning up debris left on the property by Lewiston. The Rohdes appealed; Lewiston cross-appealed. We affirm in part, reverse in part and remand for further proceedings.

The major issues raised by appellants, Rohdes, center on the contention that Lewiston did not have the right to remove the improvements. They also contend that, even if Lewiston did have that right, the district court did not correctly measure the damages arising from the Rohdes' refusal to allow removal of those improvements. Cross-appellant Lewiston argues that the evidence was insufficient to support the offsetting award for the cost of cleaning up the debris. We decline to discuss the other issues raised, which we believe to be without merit. Both parties also request attorney fees on appeal.

The Rohdes were owners of a five-acre tract in Lewiston, Idaho, on which they operated a corporate business known as Valley Ready-Mix Concrete. The Rohdes leased the business site to their corporation under a written five-year lease dated October 10, 1972. About the same date the Rohdes entered into a written stock purchase agreement with R–D Mac, Inc., an Oregon corporation. The stock purchase

agreement provided for the sale of all shares of stock of Valley Ready-Mix Concrete, Inc., to R–D Mac. In this transaction, R–D Mac acquired a batch plant, delivery trucks and other assets located on the site, as well as the five-year lease held by Valley Ready-Mix. The stock purchase agreement recited that the Rohdes would make and deliver a new written five-year lease to R–D Mac which would include certain express conditions set forth in the stock purchase agreement, but this was never done. Apparently, the parties were satisfied to rely upon the existing lease from the Rohdes to Valley Ready-Mix and upon the provisions in the stock purchase agreement.

The stock purchase agreement stated that one of the express conditions for the contemplated new lease would be:

> F. Recognition that the improvements heretofore made upon the above described real property and to be made upon said above described real property are the property of Buyer [R–D Mac]; and that Buyer has the right to change, alter and to delete or remove at any time prior to the expiration of the lease or extensions thereof, subject only to the requirement that said removal be accomplished in a good and workmanlike manner, with all holes or excavations to be filled in and graded and debris removed prior to the expiration of the term.

A somewhat similar provision was already in the existing lease to Valley Ready-Mix. The existing lease also contained a provision allowing the lessee to renew the lease for an additional period of five years upon the same terms and conditions, except for the amount of rental, provided that the lessee complied with the notice provisions of the lease. In a different part of the stock purchase agreement—not dealing with the enumerated express provisions for the contemplated new lease—was the statement: "This contract, and the rights acquired hereunder, may not be assigned by Buyer [R–D Mac] without the express prior written consent of the Sellers [the Rohdes]." We note that neither the existing lease nor the listed express conditions

to be inserted into a new lease contained any similar restrictions against transfer or assignment of the lessee's interest.

On August 8, 1973, Lewiston, a competitor of Valley Ready-Mix, purchased the batch plant, the buildings and certain other assets of Valley Ready-Mix from R–D Mac. At the same time R–D Mac assigned to Lewiston the lessee's interest in the lease dated October 10, 1972. The Rohdes never gave their written consent to this assignment. Nonetheless, Lewiston entered into possession of the lease site. Before the original five-year lease expired, Lewiston removed the batch plant from its concrete foundation and moved it to another county. Lewiston, however, continued to use and occupy the leased premises, paying rent directly to the Rohdes. Furthermore, it paid the personal property taxes on the improvements as required by the original lease.

Neither Lewiston nor R–D Mac ever gave the notice required to exercise the option to extend the lease an additional five years. However, when the original lease expired in October 1977, Lewiston did not vacate the premises, but continued to pay rent and the personal property taxes. The original lease had provided for $500 monthly payments during the initial term, but during any extension the amount was to be adjusted based upon the Consumer Price Index. Lewiston, however, continued to pay the original rent, while the Rohdes attempted to reach an agreement with Lewiston to increase that rent.

For various reasons, not relevant here, the Rohdes sent a notice of termination of occupancy to Lewiston in December 1980. The notice required Lewiston to vacate by January 1, 1981. The notice also stated: "AND YOU ARE FURTHER NOTIFIED to leave all improvements which have been placed on the premises when you vacate the same, and to leave the premises neat and clean." Lewiston vacated the property, leaving the improvements as well as some debris. It then brought this suit.

I

We will first discuss the issues surrounding Lewiston's asserted right to remove the improvements from the property. The Rohdes argue initially that Lewiston cannot take advantage of the lease provision permitting removal of improvements because the Rohdes had not consented to the assignment of the lease, either orally or in writing. The district court held that the Rohdes had waived the written consent requirement. We will assume that the Rohdes' consent was required. Nevertheless, we agree that consent was waived.

Generally, if a lease prohibits or restricts assignments, an assignment made without the consent of the lessor is voidable at his option. *Hendrickson v. Freericks*, 620 P.2d 205 (Alaska 1981). It is also true, however, that a lessor can waive a nonassignment clause since such clauses are primarily for the benefit of the lessor anyway. *Id.*; In *American Dairy Queen Corporation v. Brown-Port Co.*, 621 F.2d 255 (7th Cir.1980), the United States Court of Appeals held that a lessor had waived a requirement in its lease that there must be written consent before the lessee could sublet the premises. The lessor was aware of the sublease, executed shortly after the original lease had been secured, and collected rent for nearly eight years without objection. The Court said:

> As we said recently, "waiver occurs when an obligor manifests an intent not to require an obligee to strictly comply with a contractual duty." *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir.1979), *cert. denied,* [444] U.S. [1078], 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980). Under the circumstances, Brown-Port cannot rely upon a stale breach of paragraph 22 [written consent requirement] to avoid its obligations under paragraph 29(b) [noncompetition clause].

*Id.* at 257 n. 1. Similarly, in *Hendrickson v. Freericks, supra,* the lessor was held to have waived the nonassignment clause by accepting rent from the assignees and al-lowing them to remain in possession for five years.

In the present case, the Rohdes did not object to Lewiston's possession of the property from the time it took possession in the fall of 1973 until they gave their notice of termination in December 1980. The Rohdes also accepted rent from Lewiston, although they made some attempts to obtain an increase of that rent. Furthermore, the Rohdes required Lewiston to pay the personal property taxes on the improvements, as required by the lease, during the entire period of possession. Therefore, the district court's ruling, that the Rohdes waived the requirement that written consent be obtained before assignment of the lease, is correct.

The Rohdes next argue that, even assuming the assignment was valid, Lewiston was still not entitled to remove the improvements. They base this argument on the premise that an assignee under a lease cannot acquire a more favorable position, vis-a'-vis the lessor, than the assignor had. They then assert that Lewiston's assignor (R–D Mac) had lost its right to remove the improvements by virtue of the expiration of the original lease and its failure to timely exercise the option to renew the lease for an additional five-year period. The district court agreed that the option had not been timely exercised, but held that the Rohdes were equitably estopped from claiming that Lewiston's occupancy was unlawful because they had accepted rent and Lewiston had paid the personal property taxes on the improvements. We again agree with the district court's conclusion, although we base our decision upon a different theory. It is a well-established rule that where the order of the lower court is correct but entered on a different theory from that which we found to be dispositive, the order will be affirmed. *Sheppard v. Sheppard,* 104 Idaho 1, 655 P.2d 895 (1982).

When a lessee holds over after his tenancy for a fixed term of years expires, the lessor must elect to either treat the lessee as a trespasser or hold him to a

new tenancy. R. SCHOSHINSKI, AMERICAN LAW OF LANDLORD AND TENANT § 2:23 (1980); *see also* Annot., 45 A.L.R.2d 827 (1956). If he treats the lessee as a trespasser, the lessor may bring an action for unlawful detainer. *See* I.C. § 6–303 *et seq.* If, however, the lessor seeks, implicitly or explicitly, to hold the lessee to a new tenancy, a new lease arises by operation of law. Thus, the failure of Lewiston to follow the prescribed method of exercising the option to renew the lease for a second five-year term does not necessarily mean that Lewiston ceased being a tenant. Lewiston could still have been a tenant—although for some lesser period than five years—and it still could have the right to remove the improvements. Its right to possession, if any, is not based upon the original lease, but upon a new tenancy created by law. *See Brown v. Music Incorporated*, 359 P.2d 295 (Alaska 1961). Likewise, its right to remove the improvements is dependent upon the terms of that new tenancy.

■ A court must look to the lessor's intent, as revealed by either his words or his actions, to determine whether a new tenancy results. If a lessor demands or accepts rent from the lessee, he will be presumed to have elected to hold the lessee to a new tenancy, absent of course, a clearly expressed intention to the contrary. *See Lonergan v. Connecticut Food Store, Inc.*, 168 Conn. 122, 357 A.2d 910 (1975). In the present case, it is clear that the Rohdes did not treat Lewiston as a trespasser after the expiration of the original lease. They did not at that time demand that Lewiston vacate the property, nor did they bring an unlawful detainer action against Lewiston. The Rohdes also continued to accept rent from Lewiston. For these reasons, we hold that a new tenancy, implied from conduct, arose by operation of law.

■ The new tenancy can be one of several types: tenancy at sufferance, tenancy at will, periodic tenancy (month-to-month or year-to-year) or fixed term tenancy. The district court refused to determine which of these in fact arose, deeming the question irrelevant to the right Lewiston claimed to remove the improvements. We agree. As a matter of law, at least a tenancy at will was created when the Rohdes elected to continue the lease. Thus Lewiston was entitled to a minimum of one month's notice, under the provisions of I.C. § 55–208, before the tenancy could be terminated. It is clear that until the tenancy was legally terminated Lewiston had the right to remove the improvements. *Cf. Pearson v. Harper*, 87 Idaho 245, 392 P.2d 687 (1964) (the possession of a tenant, holding over after expiration of his lease, "was no more than a continuance of the original term," and entitled tenant to remove certain trade fixtures under I.C. § 55–308). Here, Lewiston was prevented from removing the improvements, which it owned, before the tenancy was lawfully terminated. Therefore, in this instance, there is no need to determine whether Lewiston may have had an even greater estate in the leased property than a tenancy at will.[1]

■ The terms of the original lease are usually carried over into the new tenancy. *Yachts America, Inc. v. United States*, 673 F.2d 356, 230 Ct.Cl. 26 (1982). Many courts, however, refuse to allow an option to purchase to be exercised after expiration of the original lease. *E.g., Ahmed v. Scott*, 65 Ohio App.2d 271, 418 N.E.2d 406 (1979). This is based upon the idea that only the terms which relate to the landlord-tenant relationship are carried over. *See* 2 M. FRIEDMAN, FRIEDMAN ON LEASES § 18.4 at 782 (1983). The right to remove improvements, on the other hand, does relate to the landlord-tenant relationship. It requires no affirmative action on the part of the lessee other than the physical act of removing the improvements. This act, by itself, does not create a new or different

---

1. Lewiston did not appeal from the denial of certain damages claimed to have resulted from being deprived of use of the leased property for the remainder of the second five years. Lewiston also did not appeal from the ruling requiring it to pay the additional rent which the original lease required if the option to renew was exercised.

relationship between the landlord and tenant. Upon the exercise of an option to purchase, however, the relationship of landlord-tenant changes to vendor-vendee, with all the corresponding rights and duties that relationship engenders. We therefore hold that the right to remove improvements, as provided by the original lease, is carried over into the new tenancy. *See City of Cincinnati v. Schmidt*, 14 Ohio App. 426 (1921). *Cf.* I.C. § 55–308.

## II

Another issue we must address concerns the damages arising from the Rohdes' refusal to permit removal of the improvements. In lieu of "damages" the district court awarded compensation under the doctrine of unjust enrichment, finding that the benefit bestowed was the value of the buildings "in place," and holding that it would be unjust for the Rohdes to retain any part of the benefit. The Rohdes challenge not so much the remedy employed as the measure of damages. They have always contended that because Lewiston only had a right to remove the buildings at the end of the lease, Lewiston's damages should be measured by and be limited to the value of the buildings "as moved." In our previous opinion in this appeal, we agreed. Our ruling prompted Lewiston to seek a rehearing.

The district judge did not give reasons for his discretionary choice of the measure of damages. From an appellate standpoint, we viewed the award as excessive and inappropriate. However, we are now convinced that the district court should be given the opportunity to re-examine the question of whether it would be unjust for the Rohdes to retain any of the benefit they have received from these buildings. We are persuaded, at this point at least, that our sense of justice of the case cannot override the district court's discretion when that discretion is within permitted bounds and is properly exercised.

Unfortunately, as many commentators have observed, the bounds of the restitutionary remedies are illusive and ill-defined.

The guidelines within those bounds are not all well structured. *See e.g.*, Sullivan, *The Concept of Benefit in the Law of Quasi-contract*, 64 GEO.L.J. 1 (1975) and Friedmann, *Restitution of Benefits Obtained Through the Appropriation of Property or the Commission of a Wrong*, 80 COL. L.R. 504 (1980).

■ In this instance we have found it necessary to rely principally upon the RESTATEMENT (SECOND) OF CONTRACTS (1979) (hereinafter cited as Restatement), particularly, §§ 344, 345, 370, 371 and 373. Section 371, entitled "Measure of Restitution Interest," states:

If a sum of money is awarded to protect a party's restitution interest, it may as justice requires be measured by either

(a) the reasonable value to the other party of what he received in terms of what it would have cost him to obtain it from a person in the claimant's position, or

(b) the extent to which the other party's property has been increased in value or his other interests advanced.

Section 373, states in part:

(1) Subject to the rule stated in Subsection (2) [not applicable here], on a breach by non-performance that gives rise to a claim for damages for total breach or on a repudiation, the injured party is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance.

In this instance we believe that once the Rohdes' liability was determined, the district judge had a discretionary choice among the following remedies:

(a) award a sum of money to Lewiston in the way of damages to put Lewiston "in as good a position as [Lewiston] would have had if performance had been rendered as promised." 5 CORBIN ON CONTRACTS, § 992 (Kaufman supp., 1984).

(b) specific restitution by requiring Rohdes to allow Lewiston a reasonable time to remove the structures from the

Rohdes' property. § 372 Restatement. This remedy could be combined with an award of damages for loss of use of the buildings in order to achieve the goal expressed in (a) above.[2]

(c) award a sum of money equalling the reasonable value *to Rohdes* of the buildings in terms of what it would have cost the Rohdes to obtain the buildings from a person in Lewiston's position. § 371(a) Restatement, or

(d) award a sum of money measured by "the extent to which the [Rohdes'] property has been increased in value" by the retention of the buildings. § 371(b) Restatement.

 Use of remedies (a), (b) or (c) above would result in Lewiston being fully compensated for the monetary loss it suffered due to the refusal of the Rohdes to allow *removal* of the buildings. Nevertheless, the restitutional remedy of unjust enrichment allows for a higher ceiling on recovery. According to § 371 of the Restatement, the trial court may, in its discretion and "as justice requires," measure the award either by what it would have cost the Rohdes to obtain the buildings from a person in Lewiston's position, or by the amount of the "benefit bestowed." These two choices may be roughly equivalent to the value of the buildings "as moved" and their value "in place." It must be kept in mind, however, that the court can award the full amount of the "benefit bestowed" if, and only if, the court finds that it would be unjust for the Rohdes to retain any part of the benefit. The burden of proving this prerequisite lies with Lewiston. *Hartwell Corporation v. Smith,* 107 Idaho 134, 139, 686 P.2d 79, 84 (Ct.App.1984).

 We first need to examine the "benefit bestowed." Lewiston's proof consisted of the testimony of an expert appraiser who gave his opinion as to the market value of each building separately without regard to the fact that the owner of the building had only a short term lease of the land on which the building sat. In other words, the appraiser ascribed a value to each building "in place." The court accepted the appraiser's testimony, totaled the values of each building, and used the total, $31,700, as the amount of benefit bestowed. This may or may not have been the correct result. The mere fact that the buildings had a certain value does not necessarily mean that the value of the Rohdes property was enhanced in a like amount. The precise question is, what was the difference between the value of the Rohdes' property *with* the buildings and its value *without* the buildings? In this instance, for example, the buildings were constructed by Rohdes for the purpose of operating a concrete batching plant on the premises. Lewiston removed the batching plant to another site and used the premises for a different purpose. Lewiston, in fact, did not continuously use the buildings for its own operations on the site. It is entirely possible that for some purposes the land *itself* would be worth more without the buildings. For these reasons it does not necessarily follow that the value of the buildings equals the amount of the benefit bestowed.

The same appraiser also gave his opinion of the value of each building "as moved." He arrived at this value by subtracting certain estimated moving and relocation costs from the value in place. The district court made no findings as to the value of the buildings "as moved" because the court opted to allow the higher measure of recovery.[3]

---

**2.** Comment d to § 344 of the Restatement suggests that where restitution of the specific thing is appropriate that remedy is to be preferred to an award of money. However, neither of the parties has discussed the feasibility of specific restitution and, therefore, neither will we.

**3.** We are not suggesting that the district court was required to accept all of the appraiser's moving and relocation expenses. Because the court might have found that Lewiston was capable of moving the buildings itself to other property it owned or controlled, some of the appraiser's moving and relocation expenses may not have been incurred. Moreover, we are not suggesting that the value of the buildings, "as moved," is necessarily equivalent to the lower measure of recovery allowed by subsection (a) of § 371 of the Restatement.

The district court did not articulate any reasons why Lewiston should be put in a better position because of the Rohdes' breach than Lewiston would have been in had the breach not occurred. Nor are we shown what facts make it "unjust" for the Rohdes to retain some of the benefit from the buildings if Lewiston receives the equivalent of contract damages.

■ We believe that the district court should assess each party's conduct in regard to the original lease because only through the terms of that lease does Lewiston gain any right to remove the buildings. It is not enough to say that the Rohdes breached an implied lease agreement with Lewiston. Lewiston's own conduct, or "moral posture" to use the words of some commentators,[4] should be considered. While such conduct bears on *entitlement* to the unjust enrichment remedy, it is also germane to the question of which measure of recovery is more just.

In evaluating Lewiston's conduct, the court may examine closely the merits of Lewiston's claim that it actually relied, to its detriment, upon the provisions of the lease which allowed the lessee to remove improvements affixed to the land.

In light of the foregoing discussion, we remand to the district court for reconsideration only of the award in respect to Lewiston's loss of the buildings at the termination of its lease. Because the precise questions needed to determine the lower limit of recovery as well as the upper limit of recovery under subdivisions (a) and (b) respectively of § 371 of the Restatement were not addressed by the district court, the court may take additional evidence, if necessary, upon which to base appropriate findings.

### III

In its cross-appeal Lewiston challenges the award to the Rohdes for cleaning up the debris left when it vacated the property. It claims there was no evidence presented to support the award of $3,000

and that there was, in fact, no basis for *any* particular award. This, Lewiston maintains, left the issue of damages in the realm of speculation and thus deprived the district court of the power to make any award. We disagree.

■ The general rule is that damages must be proven with reasonable certainty. The test for "reasonable certainty" has been held to require only that the damages be taken out of the realm of speculation. *Circle C Ranch Co. v. Jayo*, 104 Idaho 353, 659 P.2d 107 (1983). This has been construed to mean that the existence and extent of damages cannot be left to speculation. *Eliopulos v. Kondo Farms, Inc.*, 102 Idaho 915, 643 P.2d 1085 (Ct.App.1982) (*citing Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979)). Lewiston makes the argument that the testimony of the Rohdes' solitary witness on the question:

> "only shows that it will cost somewhere between $0.00 and $10,000.00 to remove the bricks and washout. Defendants have not taken the calculation out of the [realm] of speculation. If the trial court had determined defendants were entitled to $175.00 for cleanup damages, that finding would have been equally consistent with the testimony offered. The $3,000.00 computation is speculative and defendants are entitled at best to only nominal cleanup damages."

■ However, there is still other evidence—provided by Lewiston—upon which the district court could have relied in reaching its $3,000 figure. The president of Lewiston testified that $3,500 would be a fair price for the cleanup work. This figure, like the $10,000 figure, also included items for which the court did not believe Lewiston responsible. Nevertheless, the district court awarded the Rohdes even less than Lewiston itself calculated would be a fair price for the cleanup work. We hold that, taking *all* of the evidence together, the district court's award of $3,000 was not

4. *See* Sullivan, *supra*, at 20 n. 112.

clearly erroneous. We will not overturn it on appeal. *See* I.R.C.P. 52(a).

IV

We have examined the other issues raised on appeal and find them to be meritless. Finally, we decline to award attorney fees to either party on appeal under I.C. § 12–121 because we believe that neither the appeal nor the cross-appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *See Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). Moreover, this is not a case where the focus of the appeal was the application of settled law to the facts. *Cf. Scott v. Castle*, 104 Idaho 719, 662 P.2d 1163 (Ct.App.1983). We further hold that there is no overall prevailing party on this appeal, each party having prevailed in part. We thus also decline to award costs.

The judgment of the district court is affirmed in part and vacated in part. The cause is remanded for further proceedings consistent with this opinion.

WALTERS, C.J., and BURNETT, J., concur.