924 P.2d 217

Harold TOEWS and Lillian Toews, husband and wife, Plaintiffs–Respondents, Cross Appellants,

v.

Elmer FUNK, Jr. and Troy Lish and Stephanie Lish, husband and wife, Defendants–Appellants, Cross Respondents,

and

Jeanette Funk;  Robert Schelske and Maureen Schelske, husband and wife;  Junior Funk Farms, a partnership;  Mike Funk and Shelly Funk, husband and wife;  Gary Funk and G & M Farms, a partnership, Defendants–Cross–Respondents.

No. 19699.

Court of Appeals of Idaho.

June 7, 1994.

Service, Gasser & Kerl, Pocatello, for appellants.  Steven V. Richert argued.

David N. Parmenter, Blackfoot, for respondents.

SWANSTROM, Judge Pro Tem.

Harold and Lillian Toews brought an action against Troy and Stephanie Lish, purchasers, and Elmer Funk, Jr., when the sale described in a real estate agreement between the parties failed to take place.  A jury trial was conducted, and the jury found that the Lishes and Funk had breached the parties' contract and awarded compensatory damages to the Toews.  Following a hearing on vari-

ous post-trial motions, the district court ruled that Funk would be entitled to a new trial, limited to the issue of damages, unless the Toews accepted a remittitur from the amount awarded by the jury. *See* I.R.C.P. 59.1. The Toews accepted the remittitur and the district court entered judgment in favor of the Toews for damages, prejudgment interest and attorney fees. The Lishes and Funk appeal, disputing primarily that the jury's verdict was supported by substantial evidence. By cross-appeal, the Toews challenge the district court's alternative order granting a new trial on the issue of damage or for a remittitur of a portion of the damages found by the jury and the dismissal of non-contracting parties from the action. We affirm.

Early in 1988, the Toews, the Lishes and Funk signed a "Real Estate Agreement" (the contract) by which the Toews would sell to the Lishes two lots in Aberdeen, Idaho, including grain storage bins on the property. The contract also gave the Lishes the right to an option to purchase the Toews' interest in 1520 acres of farmland in Bingham County. The contract provided that the Lishes would have immediate use of the property, including the farmland, which would enable them to enroll the farmland into specified government set-aside programs in lieu of conducting farming operations.[1] Under the terms of the contract, the Lishes were to pay $100,000 plus interest to the Toews in ten annual installments of $14,903. Elmer Funk, Jr., acted as the representative of the Lishes in this transaction and he cosigned the contract becoming in effect a guarantor for his daughter and son-in-law, the Lishes. Unless the context requires otherwise, we may refer to the Lishes and Elmer Funk, Jr., collectively as "Funk."

In conjunction with the contract, the parties signed another document bearing the same date as the contract. This was an "Option To Purchase Real Property" (the option), on a form furnished by Farmers Home Administration (FmHA), giving the Lishes an option to purchase the 1520 acres of farmland and certain sprinkler equipment

for $120,000. At the time, the farmlands were heavily mortgaged to FmHA, and the mortgage debt exceeded the then appraised value of the farmlands. The mortgage was in default. Any sale of the property was subject to the approval of FmHA. Based on the option they held, the Lishes submitted a proposal to FmHA in July, 1988, to purchase the farmlands and sprinkler equipment for $120,000, provided that FmHA would forgive the outstanding mortgage indebtedness and would loan the Lishes the purchase money and additional funds for repairs and equipment. The proposal was rejected by FmHA because it was far below the appraised value. The Lishes and Funk determined that they were unable to increase their bid, and Funk advised Toews in the fall of 1988, that they would not be exercising the option. According to Toews' testimony, Funk also told him that because the Lishes could not acquire the farmlands they would have no use for the grain storage facilities in Aberdeen, and that they would not make the annual payments called for in the contract.

The Lishes and Funk remained in possession of Toews' farmland through 1988, and they received government set-aside payments for the 1988 crop year. The evidence at trial also showed that Funk orally leased part of the Toews' acreage to his brother-in-law and sister, Robert and Maureen Schelske, in 1988. This enabled the Schelskes to receive some set-aside payments in addition to those received by the Lishes for the Toews' land.

After a November 1988 meeting with Funk, when it became clear to Toews that neither the sale of the Aberdeen lots nor the farmlands would be consummated, Toews asked Funk to turn over the set-aside payments on all of the farmland. Funk refused, but within a short time thereafter, he offered to pay to Toews, as rent for the use of the land in 1988, $14,903 out of the final 1988 set-aside payment due to the Lishes. Toews refused this offer and filed the breach of contract action.

---

1. The set-aside programs are administered by the Agricultural Stabilization and Conservation Service (ASCS). Eligibility for payments is defined in 7 C.F.R. 795.1 to 795.24, 713.1 to 713.157.

The preventive planting endorsement is not continuous and must be applied for annually under specific provisions for each crop not planted.

After trial, the jury returned a verdict for Toews in the sum of $73,763. The jury award equaled the total set-aside payments received for the 1988 crop year, less expenses for work done on the land by Funk in the sum of $2,478. However, after considering the defendants' motion for a new trial, the district court determined that the jury verdict was contrary to law in that the amount was beyond what the Toews could have received themselves through the set-aside programs. The court attributed the excess award to a lack of instructions to the jury at the trial. The court ordered a remittitur reducing the damage award to $52,952 as an alternative to a new trial on the issue of damages. The court dismissed all of the non-contracting parties from any liability to the Toews, and the court entered judgment in favor of the Toews against Elmer Funk, Jr., and Troy and Stephanie Lish. This appeal followed.[2]

■ Funk claims first that it was error for the district court to admit testimony regarding terms negotiated by the parties which did not become part of the parties' contract. Funk argues that Toews was allowed to testify, in violation of the parol evidence rule, that the parties had contemplated the set-aside payments would be "returned" to the Toews in the event of a failure of the sale or failure to exercise the option, although no such provision appears in the contract. Funk also argues that he was prejudiced by the timing of the court's ruling not to admit proposed Plaintiff's Exhibit 001, an earlier draft of the contract containing handwritten notes by Toews in the margins purportedly showing the true intent of the parties.

This argument is not persuasive. The district court held that the contract which was signed by the parties and entered in evidence at trial as Plaintiffs' Exhibit 002 expressed the terms agreed to by the parties. The court also held that the contract was clear and unambiguous. Toews' attempts to introduce proposed Plaintiffs' Exhibit 001 and to present testimony that the return of the set-

aside payments was anticipated by the parties were met by objections, which were argued outside the presence of the jury. The court sustained those objections. Accordingly, any speculation by Funk that "the jury clearly understood that Plaintiffs did not believe that the terms articulated in the contract matched their perception of the facts" cannot be the basis of reversible error. We are not persuaded that the defendants were prejudiced by the manner in which the district court heard and ruled upon the admissibility of Plaintiffs' proposed exhibit 001.

■ The next issue raised by Funk on appeal is that the evidence did not support the jury's finding that the Lishes and Funk breached the contract. Funk argues that Toews' own testimony shows that Toews breached the contract in December 1988, when Toews wrote a letter demanding the set-aside payments. At that time, Funk argues, the first annual $14,903 installment was not yet due on the contract and Toews' demand was a breach of contract that excused Funk's duty to pay property taxes on the farmlands, to make any installment payment on the contract, and to make any further attempts to exercise the option of purchase.

■ On appeal, findings of fact which are supported by substantial, competent evidence will not be deemed clearly erroneous and, therefore, will not be disturbed. *Spanbauer v. J.R. Simplot Co.,* 107 Idaho 42, 685 P.2d 271 (1984); *Harmston v. Agro–West,* 111 Idaho 814, 727 P.2d 1242 (Ct.App.1986). When applying this standard of review of a jury verdict, the credibility of witnesses and weight to be given their testimony are matters exclusively within the province of the jury. *Goodwin v. Wulfenstein,* 107 Idaho 492, 690 P.2d 947 (Ct.App.1984).

The jury specifically found in its verdict that Funk had breached the contract and fixed the damages at $73,763, but did not specify what conduct constituted the breach. The jury had heard testimony from Troy

2. Although defendants Jeanette Funk; Robert and Maureen Schelske, husband and wife; Junior Funk Farms, a partnership; Mike and Shelly Funk, husband and wife; and G & M Farms, a partnership; were held to have no liability on the judgment, and the district court dismissed them from the action, these defendants nevertheless are named as appellants on the notice of appeal. It is not clear what affirmative relief they seek other than attorney fees and costs on appeal.

Lish admitting that he had made no payments required by the contract, nor had he paid the insurance or the taxes as required in the contract. Funk testified that after the FmHA had rejected his bid in the fall of 1988, he advised Toews that he would not be submitting another bid for the purchase of "the farm." Although Funk testified that in January 1989, he was ready to make the first payment on the contract, which he claimed was not due until March, this testimony contradicted his prior stated intent not to perform the contract. Furthermore, Funk's testimony that he had tendered the first payment under the contract was inconsistent with the notation on the check (Plaintiffs' Exhibit 009) stating, "For rent paid in full," which Toews refused. Although it is clear that Toews did not see this check at the time of its purported tender by Funk, the jury could have found that the offer to pay, if indeed a tender of immediate payment, was an offer by Funk to settle all claims of Toews for $14,903 so as to extinguish all further liability under the contract for future payments.

There is no dispute in the testimony that Funk had advised Toews that he would not be proceeding with the purchase of the farm or the purchase of the two Aberdeen lots, although the date of the communication was not clearly pinpointed. Toews testified that he understood from that point that the contract would not be performed and that he needed to be compensated for the use of his property in 1988. Toews also denied receiving any actual tender of payment under the contract and denied that there was a mutual rescission of the contract as Funk had testified.

We hold that there was sufficient evidence from which reasonable minds could conclude that the contract had been breached by Funk. The jury reasonably could have reached its decision based either on default in the payments due under the contract or anticipatory repudiation. We will not disturb the verdict in favor of Toews on the question whether the contract was breached.

Funk next asserts error in the measure of damages applied to compensate Toews for the breach of contract. Funk does not argue that the damage award is not supported by the evidence. Rather, he contends that restitution damages are appropriate only where the nonbreaching party elects to rescind the contract, which was not the situation here. He also asserts that because the contract said nothing about the "return" of the government set-aside payments in the event of the buyers' breach, Toews should not have been allowed to argue for any damage award exceeding the first $14,903 payment that would have been due under the contract or a reasonable rental value for the use of the land in 1988.

The district court in its memorandum decision relied on *Brown v. Yacht Club of Coeur d'Alene Ltd.*, 111 Idaho 195, 722 P.2d 1062 (Ct.App.1986), where this Court explained that each party to a contract may have three separate interests embodied in the contract. Discussing the restitution interest, this Court said:

> The restitution interest, as envisioned by the *Second Restatement*, seeks recovery of the value of benefits bestowed, and which it would be unjust for the other party to retain. This form of restitution is available for breach of a contract. As noted in *McEnroe v. Morgan*, 106 Idaho 326, 678 P.2d 595 (Ct.App.1984), an aggrieved purchaser may "elect to rescind a land sale contract and seek restitution of the benefits he has conferred on the seller if the seller has materially breached the contract." *Id.* at 329, 678 P.2d at 598. However, the benefits must be real, not speculative; and they must actually have been conferred upon the breaching party. [RESTATEMENT (SECOND) OF CONTRACTS § 370 (1981)].

*Id.* 111 Idaho at 199, 722 P.2d at 1066. In *Brown*, it was the seller who breached the contract. In this case, the jury found that the purchaser had materially breached the contract. The evidence established that Funk had received $76,241 in government set-aside benefits as a result of the transfer of possession of the land from Toews to Lishes and Funk and in contemplation of the sale of the farmlands. There was also evidence upon which the jury could find that Funk had expended $2,478 for weed control

or rock removal on the farmlands. Clearly, there was sufficient evidence to show that after the breach of the contract and the relinquishment of possession of the real property to the Toews, Funk still retained these benefits which the Toews had bestowed upon Funk and which were within the limits of the Toews' restitutionary interest under the contract. Those limits were defined by the jury's "damages" award. Nevertheless, the jury was not asked to decide all issues which were essential to a determination of the Toews' restitutionary interest in the contract. That determination was made later by the district judge exercising his equitable powers, as we discuss in the following part of this opinion.

## CROSS–APPEAL

### a. Did the court err in issuing a remittitur to reduce the verdict?

■ In their cross-appeal, the Toews also raise a question of damages. They argue that the district court erred in directing a remittitur reducing the amount of the damage award to the amount which the Toews would have been entitled to under the setaside programs. They assert that the jury award properly compensated them for their losses occasioned by the breach of contract, i.e., the value of the benefits which Toews had conferred on Funk by transferring possession of the land and which it would have been unjust for Funk to retain after his breach of the contract. The Toews specifically challenge the court's authority to issue a remittitur as an alternative to a new trial, when the new trial motion is grounded in I.R.C.P. 59(a)(6), not (a)(5).[3]

In its Amended Decision dated November 8, 1991, the court held that the verdict with respect to damages was contrary to law, because the amount was beyond what the Toews could have received themselves—as a single operator—under the set-aside programs. The court reiterated that the jury had not been fully instructed on the law and that the determination of the remittitur amount was for the court, not the jury, to make. After taking additional evidence of the amount of benefits the Toews could have received, the court granted the new trial motion only as to damages under I.R.C.P. 59(a)(6) subject to a remittitur pursuant to I.R.C.P. 59.1.

■ An appellate court will not reverse a trial court's order granting a motion for a new trial unless the trial court has manifestly abused its broad discretion. *Bott v. Idaho State Bldg. Authority*, 122 Idaho 471, 475, 835 P.2d 1282, 1286 (1992), *citing Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). Similarly, the review of a decision for a remittitur focuses on the trial court's discretion. *Quick*, 111 Idaho at 770, 727 P.2d at 1198. To test for an alleged abuse of discretion, we examine the trial court's reasoning to determine whether it "correctly perceived the issue as one of discretion; acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and whether the trial court reached its decision by an exercise of reason." *Sun Valley Shopping Center, Inc. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ In this case, the court granted the motion for new trial under I.R.C.P. 59(a)(6), which section of the rule applies when the verdict is questioned based upon insufficiency of the evidence or a verdict contrary to law. *See O'Dell v. Basabe*, 119 Idaho 796, 805, 810 P.2d 1082, 1091 (1991). The analysis

---

**3.** We were not furnished with a complete record of all post-trial hearings. The present record does not show the acceptance of the remittitur by the Toews. They acknowledge on page two of their "Cross-Appellants' Brief," however, that they elected to accept the remittitur upon which the judgment was based. *See* I.R.C.P. 59.1.

Ordinarily, a plaintiff who elects to accept a remittitur, when given a choice between a remittitur or a new trial, is bound by that election and may not appeal. However, an exception to the general rule exists which allows a cross-appeal by the plaintiff where, as is the case here, the defendant has appealed to challenge the verdict or the amount of damages awarded. *See, e.g., Rush v. Blanchard*, 310 S.C. 375, 426 S.E.2d 802 (S.C.1993), containing a good explanation of the rationale for the exception. *See generally* 16 A.L.R.3rd 1327, *Party's Acceptance of Remittitur in Lower Court As Affecting His Right to Complain in Appellate Court As to Amount of Damages for Personal Injury* (1967).

required under Rule 59(a)(6) motions is found in *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967) and prescribes that:

> [T]he trial court may grant a new trial when it is satisfied that the verdict is not supported by, or is contrary to, the evidence, or is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice.

*Id.* at 671, 429 P.2d at 402.

In granting a new trial and alternatively directing a remittitur, the court sufficiently stated the reasons for its rulings and specified the section of the rule governing its decision. The district court held that the jury had not been properly instructed on the maximum amount of benefits the plaintiffs could have received directly from the government set-aside programs, resulting in an excessive damage award. We uphold this ruling for the following reasons.

The jury was given an instruction regarding damages for which the Toews could be compensated if the jury determined that Funk was liable for breaching the contract, i.e., "[t]hose losses and expenses which have occurred and which may fairly and reasonably be considered in arising in the usual course of things from defendants' breach of the contract...." (Instruction No. 14). Accordingly, the jury valued the losses to the Toews by calculating the amount received by Funk in the government set-aside payments, $76,241, reduced by Funk's out-of-pocket costs expended on the land, $2,478. While the jury was justified in reaching this verdict upon the evidence adduced at trial, it is clear that the verdict can be sustained only to the extent that the amount does not exceed the restitutionary interest of the Toews, as embodied in their contract with the Lishes and Funk.

The restitution interest is defined as the promisee's interest in having restored to him any benefit that he has conferred on the other party. RESTATEMENT (SECOND) OF CONTRACTS § 344 (1981). Restitution has been recognized as a means of granting relief to prevent unjust enrichment.

*Id.* at cmt. a. In Idaho at least, a party who is liable in restitution for a sum of money must pay an amount equal to that part of the benefit bestowed upon him which would be unjust for the recipient to retain. *Brown v. Yacht Club of Coeur d'Alene, Ltd., supra,* stated it this way:

> If it is determined that benefits actually were bestowed, other elements of the unjust enrichment doctrine must be satisfied. The value of the benefits must be realized by the breaching party under circumstances where it would be inequitable to avoid payment.

111 Idaho at 199, 722 P.2d at 1066. Thus, "[t]he measure of damages is not necessarily the value of the money, labor and materials provided by the plaintiff to the defendant, but the amount of benefit the defendant received which would be unjust for the defendant to retain." *Gillette v. Storm Circle Ranch,* 101 Idaho 663, 666, 619 P.2d 1116, 1119 (1980). *See also Idaho Lumber, Inc. v. Buck,* 109 Idaho 737, 710 P.2d 647 (Ct.App. 1985); *Lewiston Pre–Mix Concrete, Inc. v. Rohde,* 110 Idaho 640, 718 P.2d 551 (Ct.App. 1985). The party who has conferred the benefit and who is seeking the return of the full amount thereof has the burden of proving that it would be unjust for the recipient to retain any part of the benefit. *Lewiston Pre–Mix Concrete, Inc. v. Rohde,* 110 Idaho at 647, 718 P.2d at 558.

These issues are largely equitable ones which properly were not given to the jury to decide in this case. Based upon the above-cited cases, we conclude that the district court correctly observed that " 'the restitution interest' measure of damages parallels the equitable doctrine of unjust enrichment." Essentially, the district court was left to decide whether it would be unjust for Funk to retain any part of the benefits bestowed. In making this determination, the judge was merely exercising his equitable powers to decide an issue that was not submitted to the jury. *Rowe v. Burrup,* 95 Idaho 747, 518 P.2d 1386 (1974); I.R.C.P. 49(a).

The district court first decided that the retention by Funk and the Lishes of all the payments received from the two set-aside

programs "is a benefit which it would be unjust for them to retain." The court then decided that Toews should not be allowed to recover any more of the payments than he would legally have been entitled to receive if he had placed the land in the set-aside programs himself. The court noted that the trial record is silent as to the total amount that Toews would have received on his own under either program. However, from evidence supplied by the local ASCS office to the court following trial, the court determined that if Toews himself had applied for the benefits while in possession of the farmlands Toews' benefits would have been limited to $52,952 because Toews qualified only as a "single operator" of the farm. On the other hand, trial evidence showed that Funk orally leased some of the farmlands to his brother-in-law in order to bring in a second "operator" to increase the total benefits to Funk and his brother-in-law. Based upon this evidence, the court concluded it would be unjust for Funk to retain $52,952 of the benefits which Toews had bestowed. In short, Toews did not prove to the trial court's satisfaction that it would be unjust for Funk to retain the remainder of the benefits received.

We conclude that the district court did not err in granting a new trial on the grounds that the evidence was insufficient to justify a damage award above $52,952. I.R.C.P. 59(a)(6). The court acted within the boundaries of its discretion in allowing the plaintiffs to accept the order of remittitur in lieu of granting a new trial. In this way, the court was able to utilize the jury's factual findings while ultimately deciding equitable issues that were not submitted to the jury in this case.

### b. Dismissal of the non-contracting defendants

Toews raises a second issue in his cross-appeal. He claims error in the district court's order of dismissal, following the jury's verdict, releasing Robert and Maureen Schelske from any liability in the action because they were non-contracting parties. Because the motion to dismiss essentially requested the trial court to enter a judgment notwithstanding the verdict, we will review the court's order under the standard applicable to motions filed pursuant to I.R.C.P. 50(b).

A judgment n.o.v. should be granted when there is no substantial competent evidence to support the verdict of the jury. *Brand S. Corp. v. King*, 102 Idaho 731, 639 P.2d 429 (1981). The question of whether the evidence before a court considering a judgment n.o.v. is sufficient to create an issue of fact is purely a question of law. *Hudson v. Cobbs*, 118 Idaho 474, 797 P.2d 1322 (1990). Therefore, we will examine the court's finding that "the record does not support a contract or contract arrangement between plaintiffs and defendants Jeanette Funk, Robert and Maureen Schelske, Junior Funk Farms, or Mike and Shelley Funk and G & M Farms." [4]

The testimony at trial was that defendants, Troy Lish, Elmer Funk, Jr., and Robert Schelske, had all qualified for and received government set-aside payments that were tied to the operation of the Toews' farmland. The Lishes and Elmer Funk, Jr., however, were the only signatories to the contract with the Toews; Robert and Maureen Schelske were lessees of a portion of the farmland from Elmer Funk, Jr.[5] The

---

**4.** The motion to dismiss the non-contracting parties has not been reproduced in the record, nor have the parties' written submittals, upon which the district court considered the motion, been made a part of the record.

**5.** Evidence at trial showed that Robert Schelske received $28,119 in set-aside payments for the Toews' farm in 1988 by virtue of an oral lease from Elmer Funk, Jr., qualifying Robert as an "operator" of part of the farmlands. This arrangement of having more than one operator of the property increased the maximum amount of

government set-aside payments for the property. Schelske testified that he paid all but about $4,200 of these benefits over to Funk for "machine hire, for rock picking, disking, maintaining the property."

The jury was not instructed in terms of any "restitution" theories of recovery. Nor was the jury instructed to determine separately the amount of liability each defendant had to the plaintiffs for the damages assessed. Before trial, the district court ruled that if the jury found for the plaintiffs and awarded damages, the amount of each defendant's liability for that award would

district court correctly concluded that "the record does not support a contract or contract arrangement between plaintiffs and defendants Jeanette Funk, Robert and Maureen Schelske, Junior Funk Farms, or Mike and Shelley Funk and G & M Farms."

As to the non-contracting parties, the Toews' cross-appeal challenged the dismissal of Robert and Maureen Schelske only from the action, not the dismissal of the other non-contracting parties. The Toews now concede that on the theory submitted to the jury—breach of contract—the jury's verdict against the Schelskes cannot be upheld. Nevertheless, they argue that the district court should have held the Schelskes liable for the net amount of set-aside benefits received and retained by them, on the restitutionary theory of "unjust enrichment." That theory for recovery from the defendants was pled in plaintiffs' amended complaint, although no instructions on that theory were given to the jury. The jury was only instructed on questions pertaining to the existence of a contract, its breach, and damages as a result of the breach. Nevertheless, the Toews' evidence did show that the Schelskes retained $4,200 of the benefits they received as an "operator" of part of the farmlands.

Arguably, under the pleadings, the Toews could have recovered the benefits retained by the Schelskes if the Toews had been able to prove that they bestowed this benefit upon the Schelskes. However, the evidence showed that it was Funk who brought the Schelskes into the picture as an additional operator in order to boost the maximum benefits above the $52,952 amount that was payable to any one "operator." Accordingly, we hold that even under the unjust enrichment theory the Toews' evidence was not sufficient to support a judgment against the Schelskes for $4,200. We affirm the district court's order of dismissal, leaving only Troy and Stephanie Lish and Elmer Funk, Jr., liable for the Toews' damages.

be determined by the court following the jury trial. This procedure has not been challenged on appeal. Essentially, the Toews argue only that the trial court erred by not finding the Schelskes

## ATTORNEY FEES

The district court included in the judgment an award of attorney fees to Toews, the prevailing party, as provided under the terms of the contract. The Lishes and Funk contest this award as part of their argument that the verdict was not supported by fact or law, asserting therefore, that Toews cannot be the prevailing party and cannot be awarded costs and fees. We find no error of law or abuse of discretion in the district court's judgment for attorney fees in favor of Toews. We affirm the award of fees at the trial level.

■ The Lishes, Funk and the non-contracting parties who were dismissed from the action below request attorney fees on appeal pursuant to I.C. § 12–121, claiming that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. Elmer Funk, Jr., and Troy and Stephanie Lish did not prevail on their appeal and, therefore, they are not entitled to an award of fees for bringing the appeal. However, they did prevail on the Toews' cross-appeal and they are entitled under I.C. § 12–120(3) to an award of their costs and attorney fees for the defense of the cross-appeal. To enable this Court to make an appropriate award of reasonable attorney fees for defending against the cross-appeal, the cost bill to be submitted by Funk and the Lishes shall also separately show the amount of fees incurred for prosecuting the appeal.

■ The Schelskes—and the other non-contracting defendants—have requested an award of fees under I.C. § 12–121. Only the Schelskes have shown possible grounds for such an award, by successfully defending against the cross-appeal. However, we decline to say that the Toews' cross-appeal attempting to overturn the district court's decision in favor of the Schelskes was unreasonable or wholly without foundation. Accordingly, we decline to award attorney fees on appeal under I.C. § 12–121 to the Schelskes.

liable for the amount of the benefits they received and "unjustly retained." Accordingly, they also contend that the court erred in dismissing the Schelskes from the action.

As to the other non-contracting defendants named in the caption of this case who were dismissed from this action following trial, no issues have been raised in this appeal as to those parties. Therefore, we decline to award either costs or attorney fees on appeal to all other appellants.

■ The Toews also request attorney fees on appeal on the basis that the contract signed by the Lishes and Funk requires the non-prevailing party in any action brought on the contract to pay the prevailing party's costs and fees. The Toews fully prevailed on issues raised in this appeal by the appellants. The contract between these parties provides for an award of attorney fees to the prevailing party. Accordingly, we award costs and reasonable attorney fees to the Toews against Elmer Funk, Jr., and the Lishes, as provided in the contract. To enable this Court to make an appropriate award for reasonable attorney fees incurred in defending against the appeal, the Toews' cost bill shall also separately show the fees incurred in prosecuting the cross-appeal.

In conclusion, we affirm the order granting the appellants' motion for a new trial or in the alternative, a remittitur. We also affirm the order dismissing the Schelskes from the case, holding that they have no liability. We award costs and attorney fees on the appeal and on the cross-appeal to the parties, as indicated above, to be determined under I.A.R. 40 and 41.

WALTERS, C.J., and WINMILL, J., pro tem, concur.